# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**DEBRA DENISE BROWN,**

       **Petitioner,**

    **v.**

**SHIRLEY RODGERS, Warden and
JEFFREY MODISETT, Indiana Attorney
General,**

       **Respondents.**

**Case No. 1:99cv549
JUDGE MARBLEY
Magistrate Judge Preston Deavers**

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Indiana but incarcerated in the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. § 2254. This matter is before the Court upon Respondent's motion to dismiss procedurally defaulted claims, (ECF No. 107), Petitioner's response in opposition, (ECF No. 111), and Respondent's reply, (ECF No. 112.) Specifically, Respondent urges this Court to dismiss Petitioner's fourth, eighth, eleventh and twelfth grounds for relief in their entirety, as well as Part D of Petitioner's ninth ground for relief, due to procedural default. In her response, Petitioner elected to voluntarily withdraw her twelfth ground for relief, (ECF No. 111, at PageID 7847), but opposes Respondent's motion to dismiss as to the other grounds. (*Id.* at Page ID 7848.) Accordingly, this Court must decide whether Petitioner has defaulted her fourth, eighth, eleventh, and Part D of her ninth ground for relief. For the reasons that follow, the Court **GRANTS** Respondent's motion to dismiss with respect to Petitioner's fourth ground for relief, Part D of her ninth ground for relief, and her eleventh ground for relief but **DENIES** Respondent's motion with respect to Petitioner's eighth ground for relief.

## I.        Factual History

In the summer of 1984, Petitioner Debra Denise Brown, who was then nineteen-years old, and her companion, Alton Coleman, set off on a murderous crime spree spanning several states, including Ohio, Michigan, Indiana and Illinois.   Petitioner is under a sentence of death in the State of Indiana but is incarcerated in the State of Ohio, where she is serving a life sentence for her role in the aggravated murder of fifteen-year old Tonnie Storey.   *See State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988).   Although Petitioner was sentenced to death by the State of Ohio in that case, on January 10, 1991, former Ohio Governor Richard Celeste commuted Petitioner's death sentence to a term of life imprisonment without the possibility of parole.   (Am. Pet., ECF No. 88, at PageID 168.)   Also in Ohio, Petitioner was convicted of the unrelated aggravated murder of Marlene Walters, and the attempted aggravated murder of her husband, Harry Walters, and was sentenced to life without parole for twenty years, as well as three consecutive terms of 10 to 25 years.   *See State v. Brown*, 31 Ohio App.3d 86, 508 N.E.2d 1030 (1986).   On April 26, 2002, Alton Coleman was executed by the State of Ohio.

The death sentence that is the subject of this habeas proceeding was imposed on June 23, 1986, in Lake County, Indiana.   Petitioner and Alton Coleman were convicted and sentenced to death in separate proceedings for stomping a seven-year old girl to death and attempting to murder a nine-year old girl by choking her with a belt after sexually assaulting her.   The Indiana Supreme Court summarized the evidence supporting Petitioner's conviction and death sentence as follows:

> The evidence supporting the jury's verdict reveals that on June 18, 1984, A.H., then age nine, and her niece, Tamika Turks, then age seven, were walking back to Tamika's house after a trip to a candy store and a hot dog stand in Gary.   A man and a woman, Alton Coleman and Deborah Brown, approached the girls. Coleman asked the children if they wanted some clothes.   They seemed agreeable, and Coleman asked them to follow Brown.   Coleman said he would catch up with

2

them later. Although Tamika commented to A.H. along the way that they should not have gone with these people, the children accompanied Brown on a walk to a secluded, wooded area. The walk was approximately 1.4 miles long, and was estimated to have taken 40 minutes for small children.

Coleman caught up with Brown and the children. At the woods he announced he was going to play a game. The adults removed Tamika's shirt and Brown then cut the shirt into strips which were used to tie up the hands, legs, and mouths of the children. At this point, Tamika began to cry and the attackers pushed her down. While Brown held Tamika's nose and mouth, Coleman stomped on Tamika's stomach and chest. The two assailants carried Tamika a short distance away, hidden in weeds out of A.H.'s view.

A.H. was then forced to perform oral sex on both Coleman and Brown. Coleman revealed a partially concealed gun and threatened to kill A.H. if she did not comply. He then raped A.H. Afterwards, A.H. heard a loud moan coming from where the two had taken Tamika. Brown stated that the girl was not dead yet, and went over to the area where Tamika was.

When Brown returned, she and Coleman began choking A.H. with their belts. A.H. lost consciousness. When she awoke, the assailants were gone. A.H. stumbled back out of the wooded area. She was discovered by a woman who called A.H.'s mother and an ambulance. Tamika lay dead in the woods.

*State v. Brown*, 577 N.E.2d 221, 224-25 (Ind. 1991).

On November 26, 1984, an Information was filed in the Lake County, Indiana Superior Court, charging Petitioner with Murder, Murder in Perpetration of a Felony, Confinement, Attempted Murder and Confinement. The charges alleged that Alton Coleman and Petitioner murdered Tamika Turks and attempted to murder A.H. (Am. Pet., ECF No. 88 at PageID 153.) Attorney Daniel Toomey, from the Lake County Public Defender's Office, and Attorney Albert Marshall were appointed to represent Petitioner. On May 7, 1986, jury selection began and on May 13, 1986, the trial commenced. (*Id.* at PageID 154.) On May 17, 1986, the jury returned verdicts convicting Petitioner of the murder of Tamika Turks and the attempted murder and molestation of A.H. On May 17, 1986, the penalty phase began and on May 22, 1986, the jury

returned a recommendation of death. (*Id.*) On June 23, 1986, the trial court accepted the jury's recommendation and sentenced Petitioner to death. As to the non-death counts, the trial court imposed an additional eighty years to be served consecutively. (*Id.*)

## II. Indiana State Court Procedural History

### A. Direct Appeal

On December 18, 1986, Attorney Daniel Toomey, who served as Petitioner's lead trial counsel, was appointed to represent Petitioner in her direct appeal. In the Amended Petition, Petitioner characterizes the circumstances surrounding her direct appeal as follows:

> Attorney Toomey agreed to represent Brown on appeal in December of 1986. He was the sole attorney on the appeal. The pleadings were voluminous and required several extensions, supplemental and amended pleadings, and motions to correct the record. On September 21, 1988, Toomey was granted a final extension to file his brief by November 21, 1988. On November 21, 1988, Attorney Toomey requested additional time to file his brief. Toomey was granted until November 28, 1988 but was informed that he was to appear and show cause why he should not be found in contempt on November 29 if the brief was not filed. (ROP PCR Vol. I p. 68-69.) On November 29, 1988, Toomey called the Clerk of Court on November 29 and explained that the brief would not be filed and that the majority of the work had not been started until November 2, 1988. (*Id.*) Toomey was informed that a decision on contempt would be made by the court on December 14, 1988. Toomey filed the brief on December 13, 1988. Toomey was held in contempt and fined $500.00 for failure to comply with two final extensions which the Indiana Supreme Court characterized as "willful disobedience."
>
> Only the following issues were raised in the Direct Appeal.
>
> Issue I:      WHETHER THE TRIAL COURT ERRED IN ADMITTING THE IN-COURT IDENTIFICATION, OF THE DEFENDANT, BY PROSECUTING WITNESS, A.H.?
>
> Issue II:      WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF UNCHARGED CRIMES AGAINST TONNIE STORIE?
>
> Issue III:      WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF THE DEFENDANT'S ORAL CONFESSION?
>
> Issue IV:      WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO

4

EVIDENCE AND PERMITTING THE JURY TO VIEW AN AUDIO/VIDEO RECORDING WHICH DEPICTED THE DEFENDANT WHILE TESTIFYING AT AN EARLIER TRIAL?

Issue V:      WHETHER THE TRIAL COURT ERRED IN REJECTING DEFENDANT'S INSTRUCTION NO. 1?

(Am. Pet., ECF No. 88, at PageID 155-56.)

On August 29, 1991, the Indiana Supreme Court issued an opinion and order affirming Petitioner's convictions and sentence of death.   *See Brown v. State*, 577 N.E.2d 221 (Ind. 1991). One judge filed a dissenting opinion, finding that Petitioner did not knowingly and voluntarily waive her right to counsel in the face of continued custodial interrogation after she invoked her right to speak to counsel.   (*Id*. at 235.)   Counsel for Petitioner filed a petition for rehearing before the Indiana Supreme Court on the interrogation issue, which was denied.   (Am.Pet, ECF No. 88, at PageID 156.)   Counsel then filed a Petition for Writ of Certiorari on the interrogation issue before the United States Supreme Court, which was also denied.   *Brown v. Indiana*, 506 U.S. 833 (1992).

### B.   Post-Conviction Proceedings

Attorney Ken Murray moved for *pro hac vice* admission in Indiana to represent Petitioner in her state post-conviction proceedings.   Attorney Murray was assisted by local counsel, James Thiros.   (Am. Pet., ECF No. 88, at PageID 156.)

On April 8, 1993, Petitioner filed her petition for post-conviction relief.   (ROP PCR Vol. I p. 102-164.)   On May 8, 1993, and following the start of an evidentiary hearing, Petitioner filed an amended petition which complied with the trial court's instructions to renumber her claims. (ROP PCR Vol. II p. 388-444.)   The Court will not recite herein each claim raised in the post-conviction petition or amended petition, but will reference the relevant claims as it addresses

5

the merits of Respondent's motion to dismiss.

The post-conviction court held an evidentiary hearing on the amended petition for post-conviction relief.   The hearing began on June 5, 1995 and was completed on June 7, 1995. Petitioner filed a post-hearing brief on August 21, 1995, the State filed its brief in opposition on October 30, 1995, and Petitioner filed a reply on December 13, 1995.   (Am. Pet., ECF No. 88, at PageID 163-64.)   On February 28, 1996, the trial court issued its findings of fact and conclusions of law denying each of Petitioner's claims.   (ECF No. 97-1, at PageID 5036.)

Petitioner appealed the denial of her petition for post-conviction relief to the Indiana Supreme Court, asserting nine grounds for relief:

I.   The Failure of the State to Provide Exculpatory Material Denied Debra Brown Her Constitutional Rights To Due Process, A Fair Trial, And Effective Assistance Of Counsel, As Guaranteed By The Fifth, Sixth, and Fourteenth Amendments To The United State Constitution And Article One, Sections Twelve and Thirteen, Of the Indiana Constitution, And Rendered the Sentence of Death Unreliable, In Violation Of The Eighth Amendment To The United States Constitution And Article One, Section Sixteen Of The Indiana Constitution.

II.   Brown Was Denied The Effective Assistance Of Counsel Where Counsel Failed To Investigate Available, Critical Psychological Evidence In Support Of Petitioner's Motion To Suppress, Thereby Denying Brown's Rights Under The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution And Article One, Sections Twelve, Thirteen, and Sixteen of the Indiana Constitution.

III.   Trial Counsel's Failure To Fully Investigate, Develop And Present Penalty Phase Evidence Denied Brown The Effective Assistance Of Counsel And Rendered The Sentence of Death Unreliable, In Violation Of The Sixth, Eighth And Fourteenth Amendments To The United States Constitution And Article One, Sections Twelve, Thirteen and Eighteen Of The Indiana Constitution.

IV.   Debra Brown Was Denied Her Right To Conflict-Free Counsel And Effective Assistance Of Counsel On Direct Appeal Where Appellate Counsel Failed To Raise And Argue Meritorious Issues As Guaranteed By The United States Sixth Amendment To The Constitution And Article One, Section Thirteen Of The Indiana Constitution.

6

V.    The Post-Conviction Court Erred In Excluding Evidence Relevant And Crucial To The Appropriateness Of The Death Penalty, In Violation Of Debra Brown's Right To Due Process As Guaranteed By The Fifth And Fourteenth Amendments To The United States Constitution And Article One, Section Twelve Of The Indiana Constitution.

VI.   The Instructions Given To Brown's Jury Were Fundamentally Erroneous And Undermined The Reliability Of Brown's Sentence Of Death, In Violation of The Eighth Amendment To The United States Constitution And Article One, Section Twenty-Three Of The Indiana Constitution.

VII.  Trial And Appellate Counsel For Debra Brown Had An Actual Conflict Of Interest, Inherent In The Lake County Public Defender System, Which Adversely Affect His Performance, Thereby Depriving Debra Brown Of Her Right To Effective Assistance Of Counsel As Guaranteed By The Sixth Amendment To The United States Constitution And Article One, Section Thirteen Of The Indiana Constitution.

VIII. The Failure Of The Prosecution And The Federal Bureau Of Investigation To Disclose And Provide, In A Timely Manner, Properly Discoverable Documents And Documents That Must Be Released Pursuant To The Freedom Of Information Act (FOIA) Has Prohibited Debra Brown From Fully Presenting Her Petition For Post-Conviction Relief And From Fully Exhausting All Issues At the State Level, In Violation Of Her Rights Under The Fifth, Sixth, Eighth and Fourteenth Amendments To The United States Constitution And Article One Sections Twelve, Thirteen, And Sixteen Of The Indiana Constitution.

IX.   Brown's Convictions And Death Sentence Are Fundamentally Erroneous And Unreliable, In Contravention Of The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution And Article One, Sections, Twelve, Thirteen, Sixteen, Eighteen, Nineteen And Twenty-Three And Article Seven, Section Four of the Indiana Constitution.

(ECF No. 89-1, at PageID 714-16.)   On November 20, 1998, the Indiana Supreme Court issued a decision affirming the trial court's denial of post-conviction relief.   *Brown v. State*, 698 N.E.2d 1132 (Ind. 1998).   The United States Supreme Court denied Certiorari.   *Brown v. Indiana*, 526 U.S. 1056 (1999).

### III.    Habeas Corpus Proceedings

On December 11, 1998, Petitioner initiated the instant proceedings by filing a notice of intent to file a habeas corpus petition, a motion to proceed in forma paupris, and a motion for the

appointment of counsel.   (Doc. # 1, 2.)   This Court appointed Attorneys Ken Murray and Dennis

McNamara to represent Petitioner.   (Doc. # 11.)   On March 16, 1999, this Court issued an Order

denying Respondent's motion to transfer this case to the Northern District of Indiana, (Doc. # 12.)

On July 16, 1999, Petitioner filed her Petition for Writ of Habeas Corpus.   (Doc. # 14.)

On July 7, 2002, the Court issued an Order granting Petitioner's motion to hold the proceedings in

abeyance while she pursued, pursuant to the Freedom of Information Act, documents and other

evidence in the possession of the FBI which, Petitioner argued, contained exculpatory or other

favorable evidence bearing upon this case.   (Doc. # 30.)   On September 24, 2012, the Court

appointed Attorney Carol Wright of the Federal Defender for the Southern District of Ohio to

serve as substitute counsel for Attorney McNamara.   (ECF. No. 74.)   On June 7, 2013, the Court

granted Respondent's unopposed motion to lift the stay of these proceedings, and on April 9, 2014,

Petitioner filed an Amended Petition for Writ of Habeas Corpus setting forth thirteen grounds for

relief:

> ***First Ground for Relief***:   Trial counsel's failure to fully investigate, develop and
> present penalty phase evidence denied Brown the effective assistance of counsel
> and rendered the sentence of death unreliable, in violation of the Sixth, Eighth and
> Fourteenth Amendments to the United States Constitution.
>
> ***Second Ground for Relief***:   The failure of the state to disclose exculpatory
> material denied Debra Brown her constitutional rights to due process, a fair trial,
> and effective assistance of counsel, as guaranteed by the Fifth, Sixth, and
> Fourteenth Amendments to the United States Constitution and a reliable sentencing
> process as guaranteed by the Eighth Amendment to the United States Constitution.
>
> ***Third Ground for Relief***:   The failure of the FBI to disclose and provide, in a
> timely manner, all documents that must be released pursuant to The Freedom of
> Information Act has prevented Debra Brown from fully presenting her petition for
> post-conviction relief and from fully presenting and exhausting all issues at the
> state level, in violation of her rights under the Fifth, Sixth, Eighth, and Fourteenth
> Amendments to the United States Constitution.

8

***Fourth Ground for Relief***:  The prosecution's use of materially inconsistent, irreconcilable theories to obtain and maintain Brown's convictions and death sentence violated her rights to due process.

***Fifth Ground for Relief***:  Brown was denied her rights to a fair trial and due process when her oral confession, which was obtained through continued custodial interrogation after she invoked her constitutional right to remain silent until she had the opportunity to talk with counsel, was not suppressed and was admitted into evidence.  The use and admission of her statement under these circumstances violated Brown's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

***Sixth Ground for Relief***:  Brown was denied the effective assistance of counsel where counsel failed to investigate available, critical psychological evidence in support of Petitioner's motion to suppress, thereby denying Brown's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

***Seventh Ground for Relief***:  The trial court erred in admitting the in-court identification of the Petitioner by prosecuting witness A.H., in violation of the Petitioner's rights to due process pursuant to the Sixth and Fourteenth Amendments of the United States Constitution.

***Eighth Ground for Relief***:  The post-conviction court erred in excluding evidence relevant and crucial to the appropriateness of the death penalty in violation of Debra Brown's right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

***Ninth Ground for Relief***:  Debra Brown was denied her right to conflict-free counsel and effective assistance of counsel on direct appeal where appellate counsel failed to raise and argue meritorious issues as guaranteed by the United States Sixth Amendment to the Constitution.

***Tenth Ground for Relief***:  Trial and appellate counsel for Debra Brown had an actual conflict of interest, inherent in the Lake County public defender system, which adversely affected his performance, thereby depriving Debra Brown of her right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution.

***Eleventh Ground for Relief***:  The instructions given to Brown's jury were fundamentally erroneous and undermined the reliability of Brown's sentence of death, in violation of the Eighth Amendment to the United States Constitution.

> **Twelfth Ground for Relief**: Brown's constitutional rights to due process, equal protection, and a reliable trial and sentencing were violated by Indiana's inadequate state post-conviction process that fails to provide a remedy for Brown to fully and fairly vindicate her federal constitutional claims in the state courts under principles of comity and federalism.
>
> **Thirteenth Ground for Relief**: Brown's conviction and death sentence are fundamentally erroneous and unreliable, in contravention of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(Am. Pet., ECF No. 88.)

## IV.    Procedural Default Discussion

This matter is before the Court upon Respondent's motion to dismiss procedurally defaulted claims.   (ECF No. 107.)   It does not appear that every claim Petitioner has raised in her habeas corpus petition was presented to the Indiana state courts either during her direct appeal or on collateral review.   As a general matter, a defendant who is convicted in Indiana of a criminal offense has available to her more than one method of challenging that conviction.   Generally, claims appearing on the face of the record must be raised on direct appeal, or they are waived. *Timberlake v. State*, 753 N.E.2d 591, 598 (Ind. 2001).   State post-conviction relief "is not a substitute for a direct appeal, but is a process for raising issues not known at the time of the original trial and appeal or for some reason not available to the defendant at that time."   *Kimble v. State*, 451 N.E.2d 302, 303 (Ind. 1983).   Issues that were or could have been raised on direct appeal are not available for review in post-conviction, and are waived absent a showing of "fundamental error."   *Bailey v. State*, 472 N.E.2d 1260 (Ind. 1985) ("As a court of review, we cannot ignore a fundamental error apparent on the face of the record.   We do require, however, that such error be raised within the provisions of Ind. R. P. C. 1, § 1(a)."); *Weatherford v. State*, 619 N.E.2d 915, 916-17 (Ind. 1993) ("The post-conviction procedures established by this Court do not afford the

convicted an opportunity for a "super appeal"). Post-conviction is the appropriate forum for raising claims unavailable on direct appeal, claims of ineffective assistance of appellate counsel, and claims of ineffective assistance of trial counsel where, as here, the petitioner was represented by the same counsel on direct appeal. *Resnover v. State*, 547 N.E.2d 814, 816 (Ind. 1989) ("Ineffective assistance of counsel as an issue is known and available to a party on his direct appeal or in his first post-conviction petition if his trial counsel was involved in his first attempt at appellate relief.").

In addition to raising each claim in the appropriate forum, a habeas litigant, in order to preserve her constitutional claims for habeas review, must present those claims to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Thus, the judgment of conviction on direct appeal, and any adverse decision rendered by the trial court in post-conviction, must be appealed to the Supreme Court of Indiana. *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c); *Clifton v. Carpenter*, 775 F.3d 760, 763 (6th Cir. 2014) ("'Due to longstanding policies of comity and respect between the state and federal courts, a habeas petitioner must give state courts the first opportunity to consider and rule upon the federal claims the prisoner wishes to use to attack his state court conviction.'") (*quoting Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009)). "A petitioner need not cite federal law 'book and verse' to fairly present a claim, but the factual and legal underpinnings of the claim must be presented as a federal claim to the state courts." *Pudelski*, 576

11

F.3d at 605 (*citing McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).   If the petitioner fails to fairly present her federal claims to the state courts but still has an avenue open by which she may do so, then the habeas petition is subject to dismissal, or stay and abeyance, for failure to exhaust state remedies.   *Rhines v. Weber*, 544 U.S. 269 (2005); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Harris v. Lafler*, 553 F.3d 1028, 1031 (6th Cir. 2009).   But in situations in which a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are procedurally defaulted, unless the petitioner can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error.   *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).   "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."   *Id*.   Second, the court must determine whether the state courts actually enforced the state procedural sanction.   *Id*.   Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.   *Id*.   Finally, if the court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for her not to follow the procedural rule, and that she was actually prejudiced by the alleged constitutional error.   *Id*.   This

"cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).   Absent a showing of a fundamental miscarriage of justice, if a petitioner cannot establish cause and prejudice to excuse the default, the claim must be dismissed because a federal habeas court may not reach the merits of a procedurally defaulted claim.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Clifton,* 775 F.3d at 764.

In the motion to dismiss, Respondent maintains that four of Petitioner's remaining claims, in their entirety or in part, are subject to procedural default.   Respondent asserts that Petitioner failed to present her fourth ground for relief to the state courts in either her direct appeal or her state post-conviction proceedings, that Petitioner's eighth ground for relief is not cognizable in these federal habeas proceedings, and that Part D of Petitioner's ninth ground for relief and her entire eleventh ground for relief are procedurally defaulted because Petitioner failed to present those claims on direct appeal and the Indiana state courts determined that she waived the claims when she attempted to assert them during her post-conviction proceedings.   The Court will address each of the claims to determine whether they are subject to the procedural defaults as Respondent contends.

      A.       *Fourth Ground for Relief*:   The prosecution's use of materially inconsistent, irreconcilable theories to obtain and maintain Brown's convictions and death sentence violated her rights to due process.

In her fourth ground for relief, Petitioner argues that prosecutorial misconduct deprived her of due process when the State presented materially inconsistent and irreconcilable theories of culpability in the separate trials of Brown and Coleman.   Specifically, Petitioner argues that at Coleman's trial, which preceded Petitioner's, "the State advanced the argument that Coleman was

the driving force behind the crimes committed against the two young victims," and "made graphic allegations of what Coleman specifically did to the victims."   (Am. Pet., ECF No. 88 at PageID 209.)   Petitioner contends that at her trial, the State put forward arguments concerning her mental state and level of culpability that were inconsistent the arguments made at Coleman's trial.   (*Id*. at PageID 209.)   According to Petitioner, "[w]here a prosecutor has obtained the death penalty on a factual basis that it expressly repudiated in a previous prosecution, it converts the capital sentencing procedures to mere gamesmanship and results in a system that invites the death penalty to be wantonly and freakishly imposed."   (*Id*. at PageID 212.)   Petitioner argues that "[t]o permit the State to flip-flop so easily, depending on whose case is being prosecuted, is to permit the adversary system of prosecution 'to descend to a gladiatorial level unmitigated by any prosecutorial obligation for the sake of the truth.'"   (*Id*. at PageID 216.) (*citing Kyles v. Whitley*, 514 U.S. 419, 439 (1995)).

In support of her inconsistent theories claim, Petitioner argues that at Coleman's trial, the State pointed to Coleman's criminal history and argued that Coleman liked underage girls because they were "young and pure."   (Am. Pet., ECF No. 88, at PageID 212.)   According to Petitioner, the State argued that it was Coleman and not Petitioner who had a knife and a gun in his possession during the commission of the crimes, it was Coleman who shredded the top of seven year-old Tamika and used it to tie the girls up, and it was Coleman was violently raped A.H. and ordered her to perform oral sex on both Coleman and Petitioner.   (*Id*.)   Finally, Petitioner contends that the State argued it was Coleman who strangled Tamika.   (*Id*.)   During her trial, Petitioner argues, "the State changed course and put forward arguments concerning Brown's mental state and level of culpability that were inconsistent with those put forward at Coleman's trial."   (*Id*.)   Petitioner

contends that the State sought to rebut her theory of defense, which was that "she was controlled and manipulated by Coleman, the criminal mastermind, due to her low IQ and dependent personality." (*Id.* at PageID 213.) In so doing, the State attempted to diminish the influence Coleman had over Petitioner and attempted to place more responsibility for the crime on Petitioner. According to Petitioner:

- The State argued that Coleman was [not] controlling Brown in any way because she was, "not easily influenced." (ROB Vol. XVIII p. 3972.)
- The State referred to Brown as "a woman who can kill for fun, who has a mind of her own." (ROP Vol. XVIII p. 3975.)
- At Coleman's trial, the State argued that Coleman ordered the victim to perform oral sex on Brown. Conversely, at Brown's trial, the State portrayed her as the driving force behind the sexual assault. "It was the woman who pulled her pants down and caused [A.H.] to perform oral sex on her." (Supp. ROP Vol. I p. 29.)
- At Brown's trial, the State argued that she was the most culpable figure, not Coleman, in the murder. "I don't know what conclusion you can draw from the evidence in this case other than this woman was the one who applied the coup de grace so to speak by which Tamika Turks was killed." (ROP Vol. XVIII p. 4047.)

(Am. Pet., ECF No. 88, at PageID 214.)

Referencing the *Brady* claim outlined in her second ground for relief, Petitioner contends that the State's arguments concerning her level of culpability were contradicted by documents that were in the State's possession but were never turned over to defense counsel. (*Id.* at 209.) Petitioner claims that the suppressed evidence, which was part of the FBI's file, supported her theory that Petitioner was under the control of Coleman at the time of the crimes, and was therefore inconsistent with the arguments advanced by the State to secure her conviction and death sentence. (*Id.* at PageID 214-16.)

Respondent argues that Petitioner procedurally defaulted her prosecutorial misconduct claim based on inconsistent theories, because she never presented it to the Indiana state courts, either during her direct appeal or post-conviction proceedings. (ECF No. 108, at PageID 7793.)

15

Respondent urges the Court to dismiss this ground for relief, claiming that Petitioner has made no attempt to establish cause and prejudice sufficient to excuse the default.  (*Id.*)

In her response, Petitioner argues that her fourth ground for relief is not defaulted because this "inconsistent theories" claim of prosecutorial misconduct is "inextricably related to her Second Claim for Relief, her *Brady* claim."  (ECF No. 111, at PageID 7821.)  Specifically, Petitioner contends:

> While Brown did not present her Inconsistent Theories claim in a separately titled claim to the state courts, she did present the necessary and relevant legal and factual underpinnings of her claims to the post-conviction court and to the Indiana Supreme Court, albeit within the context of her *Brady* claims.  Both her *Brady* claim and her Inconsistent Theories claim rely on the same federal case law interpreting Brown's constitutional rights to due process, a fair trial, and effective assistance of counsel.   Both claims are founded on the same factual underpinnings, namely the exculpatory and impeachment documents and evidence that was, and remains, suppressed by the state.
>
> The *Brady* claim and the Inconsistent Theories claim are so interconnected they are, in many ways, indistinguishable.   At the heart of both arguments is the claim that the State of Indiana had in its possession evidence that tended to establish that Alton Coleman was the driving force behind the crimes for which both he and Debra Brown were charged and tried.   This was the position taken by the State in prosecuting Alton Coleman, but not in prosecuting Brown.   Brown has argued that the evidence about the relative culpability of Coleman and Brown was exculpatory, that it was improperly suppressed by the state, and that it was material in that the failure of the state to disclose the evidence puts into question the reliability, appropriateness, and accuracy of her conviction and death sentence.
>
> During trial the defense sought to establish that Brown was substantially dominated and controlled by Coleman.   The defense presented evidence and arguments in the context of establishing a statutory mitigating factor and establishing a lower level of individual culpability of Brown as compared to Coleman.   It was argued that the prosecution characterized Brown at trial as someone who was <u>not</u> dominated or controlled by Coleman and as an individual who possessed a completely independent power to make choices concerning everything she did.   As explained in her Fourth Claim for Relief, this was the opposite stance that the state took in Coleman's trial.

(*Id.* at PageID 7821-7822.)

16

Finally, Petitioner argues that even if this Court determines that she failed to fairly present her inconsistent theories claim to the state courts, she can establish cause and prejudice sufficient to excuse the default of her inconsistent theories claim of prosecutorial misconduct.  (*Id*. at PageID 7826.)   Specifically, Petitioner argues that the State's "prior and continued suppression of exculpatory materials constitutes an external factor beyond her control that has impeded her ability to develop and present her Fourth Claim for relief in the state courts," and the suppression of these same exculpatory materials "caused her to receive ineffective assistance of counsel, to her prejudice, who failed to fully and fairly present her Fourth Claim for relief."   (ECF No. 111, PageID 7829.)

In the reply, Respondent suggests that although Petitioner's claim of prosecutorial misconduct set forth in her fourth ground for relief nearly mimics her *Brady* claim set forth in her second ground for relief, Petitioner never separately presented the freestanding claim of prosecutorial misconduct to the state courts. (ECF No. 112, at PageID 7851.)   According to Respondent:

> Brown fails to explain how the difficulty in obtaining the FBI files prevented her from claiming in Indiana state court that the prosecutor presented inconsistent theories at Brown's and Coleman's trials.   This claim is clear from the transcripts of both trials.   Further, as any preserved aspect of the Fourth Claim will be considered when the Second Claim is considered, it is unclear why Brown presses this as a separate claim.   In any event, any claim outside of the *Brady* claim (Second Claim) is procedurally defaulted for failing to present the claim to the Indiana courts; this Court should dismiss the Fourth Claim.

(*Id*.)

The issue before this Court is whether Petitioner's presentation to the state courts of a *Brady* claim for failing to disclose evidence concerning Petitioner's alleged dependent and possibly less-culpable mental state, constitutes fair presentment of the inconsistent theories claim

of prosecutorial misconduct that Petitioner seeks to present, for the first time, to this Court.   As set forth above, in order to satisfy the exhaustion requirement in federal habeas corpus, a petitioner must fairly present the substance of each constitutional claim to the state courts.  *Anderson,* 459 U.S. at 6; *Picard,* 404 U.S. at 275.   Although the fair presentment requirement is a rule of comity and not jurisdiction, *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment.

A petitioner "fairly presents" the "substance of his federal habeas corpus claim" when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim.  *Harless*, 459 U.S. at 6.  Although a certain degree of tinkering is permissible, a petitioner does not fairly present a claim if she presents an issue to the state courts under one legal theory and set of facts, and then presents the issue to the federal courts under a different legal theory or a different set of facts.   Rather, she must present to the federal court essentially the same facts *and legal theories* that were considered and rejected by the state courts.  *See, e.g.*, *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001) (finding that relatedness of claim of involuntary jury waiver to claim of failure of trial court to follow statutory requirements for effectuating valid jury waiver was not enough to preserve the former for habeas review.")

Moreover, the fair presentment requirement is not satisfied where a petitioner presented to the state courts a claim that shares a factual predicate with, but is legally or analytically distinct from, the claim that petitioner seeks to present to the federal courts.   In *White v. Mitchell*, 431

18

F.3d 517, 526 (6th Cir. 2005), the Court of Appeals for the Sixth Circuit determined that the petitioner had not fairly presented a *Batson* claim that had been presented to the state courts only as a claim of ineffective assistance of appellate counsel.   As the Sixth Circuit explained, "while these two claims are related due to the fact that the ineffective assistance claim is based on the failure to raise a *Batson* challenge, the two claims are analytically distinct."   *Id*.

Similarly, in *Hicks v. Straub*, 377 F.3d 538, 553-56 (6th Cir. 2004), the Sixth Circuit rejected the argument that a petitioner had fairly presented a Confrontation Clause claim that he had presented to the state courts as a claim of prosecutorial misconduct.   In that case, the district court had granted relief on petitioner's claim that his Confrontation Clause rights were violated when the prosecutor, during opening statements, advised the jury that the petitioner had confessed to murder to a fellow jail inmate, and subsequently failed, despite a good faith effort, to produce that inmate witness.   *Id*. at 541.   The Sixth Circuit reversed, concluding that petitioner had not fairly presented the Confrontation Clause claim.   On direct appeal, the petitioner had argued that numerous instances of prosecutorial misconduct, including arguing matters not in evidence such as the petitioner's supposed admission to committing murder, violated his rights to due process and a fair trial.   Petitioner never argued, however, that the misconduct had violated his Sixth Amendment right to confrontation.   *Id*. at 543.   The Sixth Circuit explained, "[w]ere we to hold that petitioner fairly presented his Confrontation Clause claim to the state courts on direct review, state courts would be compelled to consider *sua sponte* all possible federal legal claims that a petitioner's factual allegations might arguably support."   *Id*. at 556.

Likewise, in *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009), the Sixth Circuit reiterated that "the same claim under the same theory" must be presented to the state courts before

it can be considered in a federal habeas petition.   In that case, the petitioner attempted to raise a claim of prosecutorial misconduct, asserting that during his trial, the prosecutor impermissibly implicated him in the unrelated murders of two people.   *Id*. at 415.   The Sixth Circuit determined that the petitioner failed to properly present the legal and factual basis of the claim to the state courts in the section of his state court brief addressing his claim of trial court error for failing to grant a mistrial after allowing the prosecutor to introduce the prejudicial evidence:

> First, the heading clearly suggests that the claim to which it refers is that the *trial judge's* errors entitle Wagner to post-conviction relief.   Although the alleged misconduct stems from the prosecutor's unchecked behavior, the basis of the claim is the judge's alleged misconduct, not the prosecutor's misconduct.   Thus, this heading fails to state the proper basis for the claim in question here, namely, that it is a prosecutorial misconduct claim.

*Id*. at 416 n.2.   Further, the Sixth Circuit determined that the petitioner did not fairly present the prosecutorial misconduct claim in his post-hearing brief, which only addressed his claims of ineffective assistance of trial counsel.   Specifically, the Court held as follows:

> The brief does mention the pertinent conduct of the prosecutor, but it does so in the context of ineffective assistance allegations, not in the context of a prosecutorial misconduct claim.   Petitioner argues that this distinction is irrelevant, and focuses only on the fact that this language was presented to the Court of Appeals. However, the doctrine of exhaustion requires that *the same claim under the same theory* be presented to the state courts before raising it in a federal habeas petition.

*Id*. at 417 (emphasis added); *see also Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987) ("If the difference between these contentions is a difference in legal theory, Prather did not exhaust his claim in the state courts");   *Jamison v. Collins*, 100 F.Supp.2d 521, 550 (S.D. Ohio 1998) (finding that claim challenging identification evidence was not fairly presented in claim of ineffective assistance of trial counsel for the failure to object to that identification evidence) (*citing Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986), and

*Carsetti v. State of Maine*, 932 F.2d 1007, 1011 (1st Cir. 1991)).

Here, Petitioner concedes that she never presented her inconsistent theories claim of prosecutorial misconduct to the Indiana state courts as a free standing claim of prosecutorial misconduct, but argues that this Court should find fair presentment because she presented essentially the same factual basis to the state courts as part of her *Brady* claim.   The weight of authority, however, is stacked against Petitioner.   Based on this Court's prior holdings and the cases outlined above, the Court cannot find that Petitioner fairly presented this issue to the state courts.   Here, she has presented the same or similar set of facts to this Court under a different legal theory than the facts were presented to the state courts.   To be sure, the *Brady* claim that Petitioner sets forth in her second ground for relief, and which was properly presented to the state courts, and the claim of prosecutorial misconduct she sets forth in her fourth ground for relief, share some degree of commonality with respect to the factual basis of the claims.   But the claims are legally and analytically distinct and require this Court to apply a separate legal analysis in order to resolve the merits of each claim.   Although some of Petitioner's factual allegations support both claims, the Sixth Circuit has made clear that the relatedness of the two claims at issue does not necessarily satisfy the fair presentment requirement.   This is true even where the state court's disposition of the claim that was raised appears to require or involve disposition of the federal habeas claim that was not raised.   *See, e.g., Lott v. Coyle*, 261 F.3d at 607 (finding the petitioner had not fairly presented claim challenging voluntariness of waiver as claim challenging trial court's compliance with statutory requirements for effectuating a valid waiver, even though "the former is a function of the latter").   Accordingly, the Court finds that Petitioner failed to fairly present the prosecutorial misconduct claim outlined in her fourth ground for relief to the state courts.

Because the Court has determined that the prosecutorial misconduct allegations set forth in her fourth ground for relief are waived, this Court cannot review them absent a showing of cause and prejudice.   Here, Petitioner asserts her *Brady* claim as cause, arguing that the prior and continued suppression of exculpatory information by the State and the FBI "has prevented her from making a complete record for review, from presenting all of her claims, and from fully investigating and preparing her petition for post-conviction relief.   (ECF No. 111, at PageID 7827.)   Petitioner argues that "[b]ecause she continues to be denied access to the FBI files and thus, cannot fully determine the amount and quality of any favorable evidence that remains undisclosed, Brown is unable to fully establish materiality or prejudice."   (*Id*. at PageID 7828.) According to Petitioner, "the State's prior suppression of exculpatory materials caused her to receive ineffective assistance of counsel, to her prejudice, who failed to fully and fairly present her Fourth Claim for Relief."   (*Id*. at PageID 7829.)

Respondent asserts that Petitioner cannot use her *Brady* claim to establish cause and prejudice to excuse the default of her prosecutorial misconduct claim, because "Brown fails to explain how the difficulty in obtaining the FBI files prevented her from claiming in Indiana state court that the prosecutor presented inconsistent theories at Brown's and Coleman's trials.   This claim is clear from the transcripts of both trials."   (ECF No. 112, at PageID 7851.)   This Court agrees.   Petitioner has always maintained that Alton Coleman was the criminal mastermind of the multijurisdictional, horrific offenses occurring the summer of 1984, and that Petitioner Brown was under his domination and control.   The substance of her *Brady* claim is that the State suppressed exculpatory materials that went to the heart of this defense.   But the fact remains that her inconsistent theories claim of prosecutorial misconduct does not challenge what the State may

22

have failed to disclose to her, but instead challenges what the State affirmatively put forth and

argued to the jury regarding her and Coleman's roles in the offenses.   As Respondent correctly

notes, whether the State engaged in misconduct by arguing conflicting, irreconcilable theories

during the course of the two trials is a claim that is born from the record of the two proceedings.

Whether the State "flip-flopped" with respect to its theory of each case is a determination that is

made by analyzing the trial transcripts.   As such, Petitioner's *Brady* claim cannot serve as cause

and prejudice sufficient to excuse the default of this claim.   Accordingly, the Court hereby

**DISMISSES** Petitioner's fourth ground for relief as procedurally defaulted.   Petitioner failed to

present this claim of prosecutorial misconduct to the state courts and she cannot establish cause

and prejudice to excuse that default.

> B.        *Eighth Ground for Relief*:   The post-conviction court erred in excluding
>           evidence relevant and crucial to the appropriateness of the death penalty in
>           violation of Debra Brown's right to due process as guaranteed by the Fifth
>           and Fourteenth Amendments to the United States Constitution.

In her eighth ground for relief, Petitioner alleges that the state trial court erred during the

post-conviction proceedings when it excluded important evidence and affidavits relevant to her

claim of ineffective assistance of trial counsel during the penalty phase of her trial, effectively

depriving her of a full and meaningful post-conviction proceeding.   (Am. Pet., ECF No. 88, at

PageID 232.)   Petitioner raised several claims in the state post-conviction proceedings relating to

trial counsel's failure to fully investigate, develop and present mitigating evidence during the

penalty phase.   The state court held a hearing on Petitioner's claims.   In order to establish that

she received constitutionally deficient performance and suffered prejudice as a result, Petitioner

presented testimony from Attorney Daniel Toomey, Petitioner's lead trial counsel and also her

counsel on direct appeal. According to Petitioner, "Toomey testified at some length about his failure to interview friends and family members, his failure to seek funding for an investigator or mitigation investigator and his failure to follow up on a head injury or a reference to Brown's father being mentally ill in a psychologist's report." (ECF No. 111, at PageID 7831.) In order to establish prejudice from Toomey's allegedly deficient performance, Petitioner sought to present mitigation evidence that could have been developed and presented but for counsel's failure to investigate. According to Petitioner:

> This evidence included a complete social history based on review of social and medical records and interviews of numerous family members, friends, teachers and other first-hand observers. This social history detailed the life of deprivation, violence, abuse and mental illness that Debra suffered. It examined her family origins as sharecroppers in the Deep South and their move to a Chicago slum. It revealed the alcoholism and mental illness that both her parents and siblings suffered and the consequent violence and abuse that was a daily event in Debra's home. This evidence established that Debra was the product of a multi-generational cycle of poverty, violence, mental illness, and intellectual disability. This evidence was necessary for Brown to carry her burden of proving the facts supporting her denial of the right to effective assistance of counsel.

(*Id*. at Page ID 7831-32.) Petitioner contends that the state trial court refused to admit the evidence and "indicated that any testimony regarding mitigation and psychological evaluations would constitute cumulative evidence and mere re-litigation." (*Id*. at PageID 7832.)

Although Petitioner argues that the trial court erred in refusing to admit the evidence, Petitioner notes that the court may have actually considered it in denying Petitioner's ineffective assistance of counsel claim and finding that she could not demonstrate prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). For example, the court indicated that the testimony of Charles See, the proposed mitigation specialist, was not "really" expert testimony, and the court

24

determined that the outcome of the sentencing phase would not have been any different even if it considered the additional evidence because it was cumulative.   According to Petitioner, "[l]ogically, the state trial court had to consider the evidence in order to determine it was cumulative or duplicative," and "[b]ecause the state trial court considered the evidence, this Court should consider the evidence."   (*Id*. at 7830.)   Petitioner notes that the Indiana Supreme Court declined to address the trial court's refusal to admit the additional mitigating evidence, finding instead that Petitioner could not establish the deficient performance prong of *Strickland*.   (*Id*. at PageID 7832);   *Brown II v. State*, 698 N.E.2d 1132, 1140 (Ind. 1998).

Respondent argues that Petitioner's claim is not cognizable in federal habeas corpus, and alternatively, is procedurally defaulted.   (ECF No. 108, at PageID 7794.)   According to Respondent, the decision to admit evidence is a matter of state law and "[e]rrors of state law in and of themselves are not cognizable on habeas review."   (*Id*. at PageID 7794.)   This is especially true, Respondent argues, where the erroneous evidentiary rulings occurred during state collateral proceedings.   (ECF No. 112, at PageID 7853.)   Respondent asserts that "Brown's claims about the evidentiary missteps of the state court in collateral proceedings do not raise federal claims available on habeas review because she is not challenging her conviction or confinement."   (ECF No. 108, at PageID 7794.)   Alternatively, Respondent argues that even if cognizable, "[t]o the extent that Brown is arguing that the evidentiary rulings by the post-conviction court rendered her state post-conviction proceedings fundamentally inadequate to vindicate her substantive rights, she did not present that claim to the state courts and so it is barred from review by procedural default."   (*Id*. at Page ID 7795.)

25

In her response, Petitioner argues that her claim is cognizable in habeas corpus, because "[a] federal court may nevertheless grant relief in cases where the state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due-process violation." (ECF No. 111, at PageID 7833.) Petitioner contends that the state court violated her right to due process when it prevented her from offering the factual support necessary to prove her claim of ineffective assistance of trial counsel during mitigation. She maintains that "[t]he state court cannot employ procedures that deny her the opportunity to prove her federal constitutional claims." (*Id.* at PageID 7834.) Petitioner surmises that "United States Supreme Court precedent makes clear that a defendant's right to a hearing on a federal claim constitutes a question of federal law, even when the federal claim is raised in a state collateral proceeding" and "[i]t therefore follows that the unreasonable refusal of a state court to provide an adequate hearing can render its rejection of a federal claim both contrary to, and an unreasonable application of, clearly established federal law." (*Id.*)

Furthermore, Petitioner asserts that she fairly presented her eighth ground for relief to the state courts. Petitioner argues that a claim is fairly presented to the state courts if the petitioner cites "a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." (*Id.* at PageID 7835.) Petitioner directs the Court's attention to Argument V in her brief submitted to the Indiana Supreme Court during her post-conviction appeal. The heading for that argument states:

> Argument V:  The Post-Conviction Court erred in excluding evidence relevant and crucial to the appropriateness of the death penalty, in violation of Debra Brown's right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Section Twelve of the Indiana Constitution.

(*Id.* at PageID 7835; ECF No. 89-1, at PageID 715.)   With respect to fair presentment, Petitioner

argues:

> Clearly Brown cited a provision of the federal constitution by identifying her Right to Due Process guaranteed by the Fifth and Fourteenth Amendments to the Constitution.   Additionally, Brown cited to *Lockett v. Ohio*, 438 U.S. 586 (1978) in the substantive argument relating to this claim.   She argued that the excluded evidence was relevant mitigating evidence under *Lockett*.   *Lockett* recognizes that procedures that prevent a sentencer from giving effect to any aspect of defendant's character and record and the circumstances of the offense are violative of the Eighth and Fourteenth Amendments.   Brown also argued that the failure of the post-conviction court to permit both lay and expert testimony regarding the existence of mitigating evidence deprived her of a full and fair post-conviction hearing.   A state must provide an adequate post-conviction process where a state prisoner can assert federal constitutional claims.

(ECF No. 111, at PageID7835.)

In the Reply, Respondent reiterates the cognizability argument and contends that Petitioner

did not present her denial of a fair hearing claim to the state courts by citing *Locket v. Ohio*, 438

U.S. 586 (1978).   (ECF No. 112, at PageID 7854.)   According to Respondent:

> Brown is correct that *Lockett* holds that procedures that prevent a sentencer from giving effect to any aspect of defendant's character and record and the circumstances of the offense generally violate the Eighth and Fourteenth Amendments.   *Locket* says nothing about any federal due process rights during state collateral proceedings.   Citing *Locket* did nothing to alert the Indiana Supreme Court to the claim now raised by Brown.

(ECF No. 112, at PageID 7854.)

As set forth above, it is well settled that this Court may not consider any claim that

has not been fairly presented to the state courts.   "Fair presentment requires that the state

courts be given the opportunity to see both the factual and legal basis for each claim."

*Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009).   This requirement does not mean

that a habeas petitioner must recite "chapter and verse of constitutional law," but the

27

petitioner must at least "make a specific showing of the alleged claim." *Id.* (*citing Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).   In making this determination, the Court must review the state court proceedings and consider whether the petitioner relied upon federal cases employing constitutional analysis or on state cases that employed constitutional analysis, phrased the claim "in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right," or whether the petitioner alleged facts "well within the mainstream of constitutional law." *Slaughter*, 450 F.3d at 236.

After reviewing the state court record, it is apparent to this Court that Petitioner fairly presented her eighth ground for relief to the Indiana Supreme Court in her appeal of the trial court's decision denying her petition for post-conviction relief.

In Argument V of her brief submitted to the Indiana Supreme Court, Petitioner alleged that the trial court erred in her post-conviction proceedings by "excluding evidence relevant and crucial to the appropriateness of the death penalty, in violation of Debra Brown's right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Section Twelve of the Indiana Constitution." (ECF No. 89-1, at PageID 816.)   Petitioner dedicated eleven pages of her brief to this ground for relief, and explained the relevance of the evidence to her ability to prove prejudice under the standard for claims of ineffective assistance of counsel set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Additionally, Petitioner cited to federal authority, including *Cosey v. Wolf*, 682 F.2d 691 (7th Cir. 1982), for the proposition that the trial court should have admitted the testimony

28

from Attorney Toomey, because "when the issue of ineffective assistance of counsel is raised, trial counsel should be given the opportunity to meet and refute that allegation." (ECF No. 89-1, at Page ID 826.)   Additionally, she argued that the purportedly excluded evidence was relevant mitigating evidence under *Lockett v. Ohio*, 438 U.S. 586 (1978), which held that the sentencer in a capital case must be given a full opportunity to consider, as a mitigating factor, "any aspect of a defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death."   (*Id*. at PageID 817.)   Furthermore, the State of Indiana squarely addressed this issue in its brief, dedicating six pages of the brief to why the trial court properly excluded Petitioner's proposed mitigation evidence.   (ECF No. 89-1, at PageID 597-601.)

    In the opinion affirming the decision of the trial court, the Indiana Supreme Court acknowledged Petitioner's claim of trial court error for excluding the additional mitigating evidence in post-conviction.   Specifically, the Indiana Supreme Court characterized Petitioner's claim as follows:   "In a related claim, Brown contends that the post-conviction court improperly excluded evidence relevant to her claim that trial counsel was ineffective for failing fully to investigate, develop and present mitigating evidence. She argues that the exclusion of this evidence denied her a full and fair post-conviction hearing."   *Brown II*, 698 N.E.2d 1132, 1140.   The Indiana Supreme Court noted the reasons the trial court excluded the evidence:

> [The trial court] generally excluded this information on grounds that, even
> if it had been presented to the jury during the penalty phase of Brown's trial,
> it would not have made a difference to the jury's recommendation or the
> trial court's sentence.   As such, the post-conviction court concluded, the
> prejudice prong of the test for ineffective assistance of counsel had not been
> satisfied.

*Id*. at 1141.   The Indiana Supreme Court cautioned that it was "not as willing as the post-conviction court to imply that there are circumstances in which no quantum of evidence would be sufficient to change a jury's recommendation or a trial court's sentence."   *Id*.   Instead, the court determined that it was "unnecessary to analyze this issue in terms of prejudice" because it had already concluded in the previous section of its opinion that trial counsel did not perform deficiently with respect to the presentation of mitigating circumstances.   *Id*.

Although the Indiana Supreme Court chose not to fully address the merits of Petitioner's claim, the discussion by the Indiana Supreme Court illustrates that the court was not only aware of the issue raised by Petitioner with respect to the trial court's exclusion of the additional mitigating evidence, but the court discussed the claim in the context of prevailing constitutional standards.   Accordingly, the Court finds that Petitioner's eighth ground for relief is properly before the Court and **DENIES** Respondent's motion to dismiss on the basis of procedural default.

As to Respondent's assertion that this claim is not cognizable in a habeas proceeding, the Court notes that its Scheduling Order of September 18, 2013, authorized Respondent to file a motion to dismiss procedurally defaulted claims.   (ECF No. 82.)   As such, the proper subject of the instant motion to dismiss is whether Petitioner procedurally defaulted any of her federal claims during the course of her state court proceedings.   The determination of the merits of Petitioner's claims, including determinations regarding cognizability, will occur at a later date after the parties have had an opportunity to brief the issues.   The Court will not make such determinations at this juncture.

C.	*Ninth Ground for Relief*:  Debra Brown was denied her right to conflict-free counsel and effective assistance of counsel on direct appeal where appellate counsel failed to raise and argue meritorious issues as guaranteed by the United States Sixth Amendment to the Constitution.   (D)   Appellate counsel failed to brief the trial court's erroneous and prejudicial jury instructions at both the guilt and penalty phase of Brown's trial.

In her ninth ground for relief, Petitioner sets forth several claims of ineffective assistance of counsel on direct appeal.   (Am. Pet., ECF No. 88, at PageID 244.)   Attorney Daniel Toomey, who served as Petitioner's lead trial counsel, represented Petitioner during her direct appeal. Petitioner claims that Toomey's performance was ineffective because Toomey, as the sole attorney appointed to represent her on appeal, was overwhelmed and understaffed, admitted to having difficulty articulating the issues, and despite receiving several extensions of time, was unable to file Petitioner's brief according to the court's deadlines.   The Supreme Court of Indiana held Toomey in contempt of court for not filing Petitioner's brief in a timely manner.   Petitioner alleges that "[a]lthough punishment was withheld, Toomey learned through the Supreme Court administrator that there would be a direct correlation between the severity of the punishment handed down by the Court and the lateness of the brief."   (*Id*. at PageID 245.)

In her ninth ground, Petitioner alleges four specific instances of ineffective assistance of appellate counsel.   In Part A, Petitioner claims that counsel failed to brief the erroneous admission of Exhibit II-8, which was "a certified copy of an information and commitment order, showing that Brown was convicted of a kidnapping which occurred after June 1984."   (*Id*. at PageID 246.)   In Part B, Petitioner alleges that counsel failed to raise the denial of Petitioner's pre-trial motion to dismiss based on the unconstitutionality of the Indiana Death Penalty statutes. (*Id*. at PageID 247.) In Part C, Petitioner contends that counsel failed to recognize and challenge on appeal the fact that

31

the first aggravating circumstance duplicated the elements of the underlying offense and therefore failed to narrow the class of offenders eligible for the death penalty.   (*Id*. at PageID 249.)  Finally, in Part D, Petitioner asserts that counsel failed to raise a claim that the jury instructions at both phases of her trial were erroneous.   (*Id*. at PageID 253.)   With respect to Part D, Petitioner alleges that counsel failed to argue on appeal that "[t]he jury instructions in Brown's case created the risk that even if some jurors found the existence of one or more mitigating circumstances, unless they could all agree on the existence of the same mitigating factor, they were prevented from considering such circumstances during the weighing process."   (*Id*. at PageID 254.)   That is, appellate counsel should have argued that the trial court erred by failing to instruct the jury that their consideration of the mitigating circumstances need not be unanimous.   The instructions, Petitioner argues, "created a substantial risk that the jury was misled, and that the jury failed to give effect to factors which called for a sentence less than death."   (*Id*.)

Respondent argues that Petitioner procedurally defaulted Part D of her ninth ground for relief, because the Indiana Supreme Court determined that Petitioner waived this claim by failing to sufficiently present it in her post-conviction appeal pursuant to former Indiana Appellate Rule 8.3(A)(7).   Respondent contends that the state procedural rule at issue is firmly established and regularly enforced, and is an adequate and independent state ground sufficient to bar federal habeas review of the claim.   (ECF No. 108, at PageID 7797.)

In her Response, Petitioner argues that Part D of her ninth ground for relief is not subject to default.   First, Petitioner argues that she complied with Indiana Appellate Rule 8.3 and fully supported her ineffective assistance of appellate counsel arguments in state court.   Second, Petitioner argues that even if this Court determines that she failed to comply with the state rule, "a

32

merits review is still appropriate because she made a good faith effort to comply with the rule."
(ECF No. 111, at PageID 7837.)

In her post-conviction petition, Petitioner set forth many issues of ineffective assistance of appellate counsel concerning Attorney Toomey's performance on direct appeal.   Among the issues presented, Petitioner specifically challenged appellate counsel's failure to raise the allegedly improper jury instructions, including those concerning the weighing of mitigating circumstances which she challenges in Part D of her ninth ground for relief in this habeas action.   Specifically, in Claim 1.14 of her post-conviction petition, Petitioner alleged that counsel failed to raise the following error:

> 1.14   The penalty phase instructions did not include an instruction informing the jury that there is no unanimity requirement for the consideration of a mitigating circumstance or circumstances.

(Am. Pet., ECF No. 88, at PageID 158; ROP PCR Vol. II p. 388-444.)   After conducting an evidentiary hearing, the post-conviction trial court denied each of Petitioner's claims.   With respect to Claim 1.14, the lower court held, in pertinent part:

> The procedure set out in Indiana's death sentence statute does not require jurors to unanimously agree on the existence of a mitigating circumstance.  Despite the petitioner's allegation, we can find nothing in the instructions which implied that unanimity was required on the existence of a mitigating circumstance before that circumstance could be considered.   On the contrary, the instruction to the jury that their verdict had to be unanimous implied that if just one juror believed in the existence of a mitigating circumstance then he or she could block a death recommendation if he or she also believed that the aggravating circumstance did not outweigh the mitigating circumstance.   The jury in this case was not misled.

(ECF No. 97-1, at Page ID 5049.)

In her post-conviction appeal to the Indiana Supreme Court, Petitioner set forth nine grounds for relief and filed a lengthy brief regarding the issues raised in the appeal.   Claims IV

and VI are important to the resolution of the instant default issue:

> Claim IV:  Debra Brown Was Denied Her Right To Conflict-Free Counsel And Effective Assistance Of Counsel On Direct Appeal Where Appellate Counsel Failed To Raise And Argue Meritorious Issues As Guaranteed By The United States Sixth Amendment To The Constitution And Article One, Section Thirteen Of The Indiana Constitution.

> Claim VI:  The Instructions Given To Brown's Jury Were Fundamentally Erroneous And Undermined The Reliability Of Brown's Sentence Of Death, In Violation of The Eighth Amendment To The United States Constitution And Article One, Section Twenty-Three Of The Indiana Constitution.

(ECF No. 88, at PageID 164.)

In claim IV, Petitioner set forth allegations of appellate counsel's ineffectiveness that are almost verbatim the issues set forth in these habeas proceedings as Parts A through C of her ninth ground for relief.   That is, Petitioner argued that counsel:   (A) failed to brief the erroneous admission of Exhibit II-8; (B) failed to brief the denial of the pre-trial motion to dismiss based on the unconstitutionality of Indiana's death penalty scheme; and (C) failed to brief the State of Indiana's inadequate narrowing of the class of death penalty eligible offenders.   While Petitioner's ninth ground for relief in these habeas proceedings also includes a Part D challenging counsel's failure to raise instructional errors, the Court finds no such corresponding Part D in Petitioner's state court brief to the Indiana Supreme Court.   Although Petitioner presented the specific allegations of appellate counsel ineffectiveness contained in Part D of her ninth ground for relief to the state post-conviction trial court, it does not appear that she raised counsel's failure to challenge the erroneous instructions in her post-conviction appeal to the Indiana Supreme Court in any part of Claim IV.   Yet, inexplicably, the Indiana Supreme Court referenced a section "D" in the section of its Opinion and Order addressing the issues of ineffective assistance of appellate counsel.   In Section IV of the court's decision, the Indiana Supreme Court held as follows:

34

Brown contends that appellate counsel was ineffective for failing to raise three claims of trial court error in instructing the jury. Brown's assertions of ineffective assistance of counsel are conclusory in nature and not supported by any argument or authority as to deficient performance. We find such claims waived for failure to comply with Ind. Appellate Rule 8.3(A)(7) (requiring an appellant's brief to set forth "the contentions of the appellant with respect to the issues presented, reasons in support of the contentions along with citations to authorities, statues, and parts of the record relied upon").

[FN16.] Brown also challenges these and an additional instruction as erroneous. Claims of trial court error in instructing the jury not raised on direct appeal are not available for post-conviction review unless the failure to raise them was the result of ineffective assistance of counsel or, perhaps, unless they constituted fundamental error. Although Brown refers to these instructions as "fundamentally erroneous" in the caption to the relevant section of her brief, the narrative portion of that section makes no effort to demonstrate fundamental error. We find such claims, even if available under the fundamental error doctrine, waived for failure to comply with Ind. Appellate Rule 8.3(A)(7).

*Brown II*, 698 N.E.2d 1132.

In her response to the motion to dismiss procedurally defaulted claims, Petitioner argues that she presented the issue of ineffective assistance of appellate counsel for failing to raise the erroneous jury instructions to the Indiana Supreme Court and cites to ten pages of her appellate brief. Interestingly, she does not direct the Court's attention to any section of her state court brief discussing Claim IV, or to any section of her brief asserting a freestanding claim of ineffective assistance of appellate counsel. According to Petitioner:

Again, Brown raised the issue of ineffective assistance of appellate counsel for failing to raise the issue of fundamentally erroneous jury instructions. (ECF No. 89-1, at PageID 828-38.) Between the guilt and penalty phases of her trial, Brown raised issues concerning nine different instructions. (*Id.*) Brown supported this claim with over ten pages of facts and caselaw. And on three separate occasions, Brown argued that the failure of appellate counsel to pursue these issues on appeal constituted ineffective assistance of appellate counsel.

(ECF No. 111, at PageID7839.) The pages of her state court brief cited by Petitioner all correspond to Claim VI before the Indiana Supreme Court, wherein she set forth several

freestanding claims of erroneous jury instructions. The heading to that section provides as follows:

> ARGUMENT VI: THE INSTRUCTIONS GIVEN TO BROWN'S JURY WERE FUNDAMENTALLY ERRONEOUS AND UNDERMINED THE RELIABILITY OF BROWN'S SENTENCE OF DEATH, IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TWENTY-THREE OF THE INDIANA CONSTITUTION.

(ECF No. 89-1, at PageID 828.) In the argument regarding Claim VI, Petitioner set forth four specific arguments regarding the instructions, categorizing the arguments from (A) to (D). Specifically, Petitioner argued that the jury instructions in her case were constitutionally infirm because they (A) prevented the jury from considering mercy during the penalty phase, (B) improperly informed the jury of irrelevant sentencing considerations concerning concurrent or consecutive sentences and time off for "good behavior", (C) failed to properly inform the jury that they must find the existence of aggravating circumstances beyond a reasonable doubt, and (D) failed to inform the jury that unanimity was not required to find the existence of a mitigating circumstance. (*Id*. at PageID 828-38.)

Petitioner appears to argue that her claim of ineffective assistance of appellate counsel was properly presented because she referenced it "on three separate occasions." (ECF No. 111, at PageID 7839.) It is true that Petitioner included a concluding sentence regarding counsel's performance after setting forth several of her erroneous jury instructions claims, and in particular, she did so after setting forth the instructional errors alleged in parts (A) through (C) of Claim VI. Importantly, however, she failed to do so at the conclusion of part (D) of Claim VI, where she challenged counsel's failure to raise the

36

erroneous instructions concerning the weighing of mitigating factors, which is the claim of ineffective assistance of counsel that she sets forth in Part D of her ninth ground for relief in these habeas proceedings, and which is the claim Respondent challenges as defaulted. It is also important to note that although Petitioner tossed in a conclusory statement about the ineffectiveness of her appellate counsel for failing to raise the instructional errors, she never referenced *Strickland*, and failed to otherwise provide any law or argument regarding counsel's deficient performance or prejudice. It seems likely that the Indiana Supreme Court was referencing the three conclusory sentences regarding ineffective assistance of counsel that were set forth in Claim VI. This reading of the opinion would explain the Court's footnote which indicated that Petitioner set forth an additional freestanding claim of instructional error that did not have a corresponding reference to ineffective assistance of counsel.

The Court makes the following findings with respect to Petitioner's post-conviction appeal. First, Petitioner failed to set forth a freestanding claim of ineffective assistance of appellate counsel for failing to challenge the jury instructions as part of Claim IV, where she presented the other claims of ineffective assistance of appellate counsel that she also presents to this Court as Parts A through C of her ninth ground for relief. Second, in Claim VI before the Indiana Supreme Court, Petitioner raised a freestanding claim of instructional error, and challenged four categories of instructions, specifically that the jury was prevented from considering mercy, was informed of irrelevant sentencing considerations, was not informed that it had to find the existence of aggravating circumstances beyond a reasonable doubt, and was not informed that unanimity was not required to consider a mitigating circumstance. (ECF No. 89-1,

at PageID 828-38.)   Third, with respect to that freestanding claim of instructional error, Petitioner included a conclusory sentence alleging ineffective assistance of appellate counsel for failing to raise the specific instructional errors that she sets forth in the first three arguments concerning Claim VI, *i.e.* that the jury was prevented from considering mercy, was informed of irrelevant sentencing considerations, and was not instructed that it had to find the existence of aggravating circumstances beyond a reasonable doubt.   Petitioner did not set forth a conclusory sentence regarding counsel's performance at the end of part D to Claim VI, where she argued that the jury was not properly instructed regarding the fact that unanimity was not required to consider a mitigating circumstance.   Fourth, the Indiana Supreme Court appears to have viewed the three conclusory sentences as an attempt by Petitioner to set forth a claim of ineffective assistance of counsel for failing to raise some of her claims of instructional error, but not the claim that is raised in Part D of Petitioner's ninth ground for relief and which is the subject of this motion to dismiss. Finally, the court determined, pursuant to state Appellate Rule 8.3(A)(7), that Petitioner waived the claims of ineffective assistance she attempted to present as part of Claim VI, because Petitioner's "assertions of ineffective assistance of counsel are conclusory in nature and not supported by any argument or authority as to deficient performance."   *Brown II*, 698 N.E.2d at 1145.

The first part of the *Maupin* test requires this Court to determine whether a state procedural rule is applicable to Petitioner's claim, and, if so, whether Petitioner violated that rule.   At the time of Petitioner's appeal, former Indiana Appellate Rule 8.3(A)(7), which is now codified as Appellate Rule 46(A)(8), required Petitioner to "cogently" present her arguments and support them with proper citation to authority.   In Claim VI before the Indiana Supreme Court, Petitioner

made three conclusory statements with respect to appellate counsel's failure to challenge the jury instructions. First, and in connection with Petitioner's argument that the instructions prevented the jury from considering mercy, Petitioner stated "the failure of appellate counsel to pursue this issue on appeal constituted ineffective assistance of counsel and prejudiced Brown." (ECF No. 89-1, at PageID 830.) With respect to her argument that the instructions permitted the jury to consider irrelevant sentencing considerations, Petitioner stated "appellate counsel's failure to raise and brief this issue on appeal, denied Brown the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article One, Section Thirteen of the Indiana Constitution." (*Id*. at PageID 833.) Finally, with respect to her argument that the instructions failed to explain that the jury had to unanimously find the existence of the same aggravating circumstance, Petitioner argued that "[t]he failure of appellate counsel to raise and brief this issue on appeal also denied Brown the effective assistance of counsel in contravention of the Sixth Amendment to the United States Constitution and Article One, Section Thirteen of the Indiana Constitution." (*Id*. at 835.)

Petitioner does not dispute that Appellate Rule 8.3(A)(7) existed at the time of her post-conviction appeal and that the Indiana Supreme Court actually enforced that rule. *See Brown II*, 698 N.E.2d 1132, 1145 (Ind. 1998.) What Petitioner disputes is whether she complied with the rule. Petitioner contends that she complied by referencing the ineffective assistance of counsel in three parts of her brief, and alternatively, she argues that even if she failed to comply, the Court should find that she made a reasonable effort to do so and should consider her substantial compliance with the rule. (ECF No. 111, at PageID 7839-41.) This Court cannot agree. It is apparent to the Court that Petitioner merely "tossed in" a single sentence regarding appellate

counsel ineffectiveness at the conclusion of three sections of her brief addressing a separate, freestanding claim of instructional error.   Petitioner made no attempt to cite any authority or provide even minimal argument with respect to her broad, conclusory statements regarding counsel's performance.   Petitioner's reference to appellate counsel failed to even, at a bare minimum, reference *Strickland.*   Moreover, Petitioner failed to offer any argument with respect to deficient performance or prejudice.   Furthermore, an analysis of cases enforcing the state appellate rule at issue shows that Petitioner's efforts fell short of the requirements of the rule. *See, e.g., Ben-Yisrayl v. State*, 753 N.E.2d 649 (Ind. 2001) (appellate review of petitioner's post-conviction constitutional claims waived because petitioner did not present specific arguments); *Dickens v. State*, 754 N.E.2d 1, 5 (Ind. 2001) (Sixth Amendment Confrontation Clause claim waived for failing to develop the argument); *Allen v. State*, 749 N.E.2d 1158, 1175 (Ind. 2001) ("defendant waived ineffective assistance of counsel claim on appeal by failing to present a cogent claim and making "only a passing reference to brain dysfunctions"); *Dunlop v. State*, 724 N.E.2d 592 (Ind. 2000) (failure to cite authority supporting constitutional claim forfeits the claim on appeal); *Reyburn v. State*, 737 N.E.2d 1169, 1173 (Ind. 2000) ("bald assertion without any case citations or argument" not "cogent argument").

Finally, the Court is not prepared to find that Petitioner met even a lesser standard of substantial compliance with the cogent reasoning requirement of former Appellate Rule 8.3(A)(7). In Part D of her ninth ground for relief in these habeas proceedings, Petitioner challenges counsel's failure to raise only the instructions concerning the determination and consideration of the mitigating circumstances.   In the section of her state appellate brief addressing this same freestanding instructional issue, Petitioner failed to include even the bare, conclusory reference to

her appellate counsel's assistance that the state court deemed insufficient to comply with Rule 8.3(A)(7).   A freestanding claim of instructional error is legally distinct from a claim of ineffective assistance of appellate counsel for failing to raise the instructional issue.   As this Court has already emphasized, a petitioner does not fairly present a claim if she presents an issue to the state courts under one legal theory or set of facts, and then presents the issue to the federal courts under a different legal theory or set of facts.   Therefore, even if Petitioner had included a conclusory reference to counsel's assistance as part of that particular claim of instructional error, she would not have necessarily presented the factual *and legal basis* of her ineffective assistance of appellate counsel claim.   *See, e.g.*, *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005) (petitioner did not fairly present freestanding *Batson* claim that had been presented to the state courts only as a claim of ineffective assistance of appellate counsel for failing to raise *Batson* claim because "while these two claims are related due to the fact that the ineffective assistance claim is based on the failure to raise a *Batson* challenge, the two claims are analytically distinct").

The United States Court of Appeals for the Seventh Circuit has determined that the state procedural rule at issue is an adequate and independent state ground sufficient to foreclose federal habeas review of an alleged constitutional error.   In *Chandler v. Duckworth*, No. 88-3083, 1990 WL 169602 (7th Cir. 1990), the petitioner attempted to challenge seven jury instructions before the Indiana Supreme Court.   That court held that the challenges were waived because petitioner failed to comply with Indiana Appellate Rule 8.3(A)(7).   The Seventh Circuit deemed the jury instruction claim barred by procedural default, holding that "[w]hen a state court relies explicitly upon a state procedural default rule in declining to review a federal question, a federal court sitting in habeas corpus jurisdiction must accept that determination as an 'adequate and independent'

41

state ground for decision of the issue."   *Id.* at *2 (*citing Williams v. Chrans*, 894 F.2d 928, 934 (7th Cir. 1990); *Harris v. Reed*, 489 U.S. 255 (1989)); *see also Badelle v. Correll*, 452 F.3d 648, 664 (7th Cir. 2006) (enforcing procedural default where Indiana state court determined petitioner's arguments were waived for failing "to provide the court with any pertinent citations to the record or case law support"); *Manges v. Superintendent*, No. 3:11-cv-085, 2013 WL 5966438, *3 (N.D. Ind. Nov. 3, 2013) (finding Indiana Appellate Rule 46(A)(8)(a), which recodified the "cogent reasoning" requirement of former Rule 8.3(7)(A), to be an adequate and independent state law ground to foreclose federal habeas review even if is "discretionary" or "frequently ignored" because it is still "solidly established"); *Mitchell v. Superintendent, Indiana State Prison*, No. 3:08-cv-359, 2010 WL 2710587, *4 (N.D. Ind. July 1, 2010) (habeas petitioner procedurally defaulted claim where Indiana state court refused to consider it because it was not supported "with cogent reasoning" and that requirement was "adequate and independent" state ground); *Schidler v. Superintendent, Indiana State Prison*, No. 3:08-cv-328, 2009 WL 2060114, *3 (N.D. Ind. July 9, 2009) (same).

In sum, the Court has determined that there is a state procedural rule at issue, that Petitioner failed to comply with that rule, that the State of Indiana actually enforced the rule, and the rule is an adequate and independent state ground sufficient to prevent this Court from considering Petitioner's claim.   Petitioner does not attempt to argue cause and prejudice to excuse this default. Accordingly, the Court **GRANTS** Respondent's motion to dismiss Part D of Petitioner's ninth ground for relief because that claim is procedurally defaulted.

D.        *Eleventh Ground for Relief*:   The instructions given to Brown's jury were fundamentally erroneous and undermined the reliability of Brown's sentence of death, in violation of the Eighth Amendment to the United States Constitution.

42

In her eleventh ground for relief, Petitioner presents a freestanding claim of instructional error, alleging the final instructions at the guilt and penalty phases of her trial precluded the jury from considering mercy, informed the jury of irrelevant sentencing considerations, failed to clearly explain that the jury's finding on the existence of an aggravating circumstance must be unanimous, and failed to inform the jury that unanimity was not required to find the existence of a mitigating circumstance.  (Am. Pet., ECF No. 88 at PageID 258-65.)   Respondent argues that Petitioner procedurally defaulted this claim.   According to Respondent, the claim is waived because it is a record-based claim that should have been raised on direct appeal, noting that the Indiana state courts enforced the waiver and refused to consider the claim in post-conviction proceedings.   (ECF No. 108, at PageID 7798.)   Respondent directs the Court's attention to the Indiana Supreme Court's opinion affirming the decision of the post-conviction court:

> Brown also challenges these and an additional instruction as erroneous.   Claims of trial court error in instructing the jury not raised on direct appeal are not available for post-conviction review unless the failure to raise them was the result of ineffective assistance of counsel or, perhaps, unless they constituted fundamental error.   Although Brown refers to these instructions as "fundamentally erroneous" in the caption to the relevant section of her brief, the narrative portion of that section makes no effort to demonstrate fundamental error.   We find such claims, even if available under the fundamental error doctrine, waived for failure to comply with Ind. Appellate Rule 8.3(A)(7).

*Brown II*, 698 N.E.2d 1132, 1145 n.16.

Petitioner argues that her claim of instructional error was properly raised and supported in post-conviction.   First, Petitioner argues that the ineffective assistance of appellate counsel prevented her from raising the claim on direct appeal.   Specifically, Petitioner directs the Court's attention to her post-conviction appellate brief setting forth the jury instruction claim, and notes that "[o]n three separate occasions, Brown argued that

43

the failure of appellate counsel to pursue these issues on appeal constituted ineffective assistance of appellate counsel."   (ECF No. 111, at PageID 7844.)   Second, Petitioner argues that she complied with former Indiana Appellate Rule 8.3(A)(7), because she "also referred to this error as 'fundamentally erroneous' and supported that assertion with facts and citations to nine different holdings from the United States Supreme Court that addressed jury instructions and the need for reliability in capital trials."   (*Id*.) Alternatively, Petitioner argues that even if this Court agrees that she violated a state procedural rule, the Court should still consider her claim, because she "effectively and substantially complied with the state rule, or made a reasonable and good faith effort to comply with the rule."   (*Id*. at PageID 7844-45.)

This Court must determine whether Petitioner has procedurally defaulted her claims of instructional error.   When a state court denies a prisoner relief on a question of federal law and bases its decision on a state procedural ground that is independent of the federal question, the claim is procedurally defaulted.   *Coleman v. Thompson*, 501 U.S. 722 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989) (finding procedural default when the "last state court rendering judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar").   In this case, the Indiana Supreme Court was the last court to consider Petitioner's claim of erroneous jury instructions, and it determined that her claim was waived for failing to raise it on direct appeal.   The Court finds the ruling of the Indiana Supreme Court to be a clear expression of waiver and a refusal to consider the merits of a record-based claim that should have been raised on direct appeal.   Petitioner does not argue otherwise.   Instead, Petitioner argues that the Indiana

44

Supreme Court erred in finding waiver, because she argued that the ineffective assistance of appellate counsel prevented her from raising the claim on direct appeal, and alternatively, she set forth sufficient allegations of fundamental error.

With respect to Petitioner's assertion that the ineffective assistance of appellate counsel prevented her from raising her instructional error claim on direct appeal, the Court notes that the Indiana Supreme Court determined that she waived that argument, because it was "conclusory in nature and not supported by any argument or authority as to deficient performance."  *Brown II*, 698 N.E.2d 1132, 1145 (1998).   This Court addressed that specific claim of ineffective assistance of counsel in the previous section of this Opinion and Order and determined that it was procedurally defaulted.

Next, Petitioner argues that the Indiana Supreme Court erred in concluding that she failed to satisfy Indiana Appellate Rule 8.3(A)(7) with respect to her argument concerning fundamental error.   Indiana's "fundamental error" review is an exception to the state's rules of waiver, and a means by which an individual may "resuscitate" an otherwise defaulted claim.   *See Lee v. Davis*, 328 F.3d 896, 900 n.6 (7th Cir. 2003) ("An argument of trial court error that has been waived can be resuscitated on appeal if the error was fundamental under Indiana law.").   In *Willis v. Aiken*, 8 F.3d 556, 566 (7th Cir. 1993), the United States Court of Appeals for the Seventh Circuit conducted a lengthy examination of the caselaw dealing with Indiana's fundamental error doctrine as it relates to federal procedural default.   The Seventh Circuit concluded that, unlike some states, "Indiana does not equate federal constitutional error with fundamental error.   Like New Mexico, Indiana mandates review on the merits of fundamental rights claims only when the denial of the right 'gives rise to a question of fundamental error as defined by state law.'"   *Willis*, 8 F.3d at 567.

The Seventh Circuit concluded that "the determination of the Indiana appellate court, that no fundamental error resulted from the instruction, rests on an independent and adequate state ground."  *Id.*

In this case, the Indiana Supreme Court determined that Petitioner failed to sufficiently state her arguments with respect to fundamental error.   In essence, that court enforced a double default by concluding first that Petitioner waived her claim by not raising it on direct appeal, and then also concluding that Petitioner waived potential review under any of the exceptions to the waiver rule by not properly supporting her arguments pursuant to the state rules of appellate procedure.   Petitioner has presented this Court with no persuasive argument that the state court's reliance on its own procedural defaults is misplaced.

The United States Court of Appeals for the Seventh Circuit has recognized Indiana's waiver doctrine as an adequate and independent state law ground to preclude federal habeas review.   *See*, *e.g.*, *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008) (finding Indiana's waiver doctrine to be "adequate and independent state ground for rejecting Wrinkles' constitutional claims" because "Indiana courts have long recognized, and the *Wrinkles II* court reaffirmed, that '[c]laims that are available, but not presented, on direct appeal are waived for post-conviction review unless the claimed error is fundamental'"); *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003) (finding Indiana's waiver doctrine sufficient to preclude federal habeas review of prosecutorial misconduct claim not raised on direct appeal).   *See also Anderson v. Buss*, No. 3:05-cv-545, 2007 WL 325347 (N.D. Ind. 2007) (finding that in Indiana, "[w]aiver is an adequate and independent state law procedural ground" to prevent federal habeas review when "the last state court rendering

46

judgment in the case 'clearly and expressly' states that its judgment rests on the state procedural bar").   Furthermore, as this Court discussed in the previous section of this Opinion and Order, the Seventh Circuit has also determined that Rule 8.3(A)(7) is an adequate and independent state law ground to preclude federal habeas review of a constitutional claim.   *Chandler v. Duckworth*, 1990 WL 169602 at *2.

A procedural default can be overcome if a petitioner can show cause and prejudice sufficient to excuse the default.   It is well-settled that a claim of ineffective assistance of appellate counsel can constitute cause for the procedural default of another claim, so long as the ineffective assistance claim has been presented to the state courts and is not procedurally defaulted.   *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that an ineffective assistance of counsel claim offered as cause for the default of a substantive federal claim must first be properly presented to the state courts); *see also Lee v. Davs*, 328 F.3d 896, 901 (7th Cir. 2003) (citing *Edwards*).   Here, this Court has already concluded in the previous section of this Opinion and Order that Petitioner's claim of ineffective assistance of appellate counsel for failing to challenge the jury instructions on appeal is itself procedurally defaulted, and accordingly, that claim cannot act as cause to excuse the procedural default of Petitioner's freestanding claim of instructional error set forth in her eleventh ground for relief.   Accordingly, the Court **GRANTS** Respondent's motion to dismiss and hereby **DISMISSES** Petitioner's eleventh ground for relief as procedurally defaulted.

## V.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

Respondent's motion to dismiss procedurally defaulted claims (ECF No. 107.)   Specifically, the Court hereby **GRANTS** Respondent's motion to dismiss and **DISMISSES** Petitioner's fourth ground for relief, Part D of Petitioner's ninth ground for relief, and her eleventh ground for relief as procedurally defaulted.   The Court **DENIES** Respondent's motion to dismiss as to Petitioner's eighth ground for relief and finds that claim to be properly before the Court for a consideration on the merits.   Finally, the Court notes that Petitioner has voluntarily **WITHDRAWN** her twelfth ground for relief.   (Response, ECF. No. 111, at 37.)

 

      **IT IS SO ORDERED.**

                              **s/Algenon L. Marbley**
                              **ALGENON L. MARBLEY**
                              **United States District Judge**

**Date: March 30, 2015**