IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEBRA DENISE BROWN,**

**Petitioner,**

v.

**Case No. 1:99cv549**
**JUDGE MARBLEY**
**Magistrate Judge Preston Deavers**

**SHIRLEY ROGERS, et al.**

**Respondents.**

OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Indiana but incarcerated and serving a life sentence in the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. § 2254.  This matter is before the Court upon Petitioner's unopposed motion for leave to file a Second Amended Petition, (ECF No. 135), and Petitioner's motion to stay these proceedings in order to return to state court to exhaust a claim of Intellectual Disability pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Hall v. Florida*, 134 S.Ct. 1986 (2014), as well as a claim challenging the constitutionality of her death sentence pursuant to *Hurst v. Florida*, 136 S.Ct. 616 (2016).  (ECF No. 136.)  Also before the Court are Respondent's response in opposition to Petitioner's motion to stay, (ECF No. 137), and Petitioner's reply, (ECF No. 138.)

I.      Relevant Procedural History

This Court set forth the procedural history of this case in its March 30, 2015, Opinion and Order addressing procedural default and will not recount that history herein.   (*Opinion and Order*, ECF No. 113.)   For purposes of the instant motion, it is relevant to note that the death sentence that is the subject of these habeas proceedings was imposed on June 23, 1986, in Lake County,

1

Indiana.   Petitioner and her co-defendant, Alton Coleman, were convicted and sentenced to death

in separate proceedings for murdering a seven-year old girl and attempting to murder a nine-year

old girl after sexually assaulting her.   *See State v. Brown*, 577 N.E.2d 221, 224-25 (1991).

On December 11, 1998, Petitioner initiated the instant proceedings by filing a notice of

intent to file a habeas corpus petition, a motion to proceed *in forma paupris*, and a motion for the

appointment of counsel.   (Doc. # 1, 2.)   This Court appointed Attorneys Ken Murray and Dennis

McNamara to represent Petitioner.   (Doc. # 11.)   On March 16, 1999, this Court issued an Order

denying Respondent's motion to transfer this case to the Northern District of Indiana. (Doc. # 12.)

On July 16, 1999, Petitioner filed her Petition for Writ of Habeas Corpus.   (Doc. # 14.)

On July 7, 2002, the Court granted Petitioner's motion to hold the proceedings in abeyance while

she pursued, pursuant to the Freedom of Information Act (FOIA), documents and other evidence

in the possession of the FBI that Petitioner argued contained exculpatory or other favorable

evidence bearing upon this case.   (Doc. # 30.)   On September 24, 2012, the Court appointed

Attorney Carol Wright of the Federal Defender for the Southern District of Ohio to serve as

substitute counsel for Attorney McNamara.   (ECF No. 74.)   On June 7, 2013, the Court granted

Respondent's unopposed motion to lift the stay of these proceedings, and on April 9, 2014,

Petitioner filed an Amended Petition for Writ of Habeas Corpus setting forth thirteen grounds for

relief.   On March 30, 2015, the Court issued an Opinion and Order dismissing Petitioner's fourth

and eleventh grounds for relief, as well as part D of her ninth ground for relief, on the basis of

procedural default, and also finding that Petitioner voluntarily withdrew her twelfth ground for

relief.   (*Opinion and Order*, ECF No. 113.)   Petitioner filed a motion to supplement the record,

which this Court granted on March 14, 2016.   (ECF No. 130.)   This matter is now before the

Court on Petitioner's motion for leave to file a Second Amended Petition, (ECF No. 135), and her

motion for stay and abeyance so that she may return to state court to exhaust two new claims for relief.   (ECF No. 136.)

II.        Unopposed Motion for Leave to File a Second Amended Petition

On August 11, 2016, Petitioner filed a motion for leave to file a Second Amended Petition, along with her proposed fourteenth and fifteenth grounds for relief.   (ECF Nos. 135 and 135-1.) In her proposed fourteenth ground for relief, Petitioner alleges that pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002), she is categorically ineligible for the death penalty because she suffers from Intellectual Disability ("ID").   (ECF No. 135-1, at PAGEID # 17036.)   In her proposed fifteenth ground for relief, Petitioner seeks to challenge the constitutionality of her Indiana death sentence in light of *Hurst v. Florida*, 136 S.Ct. 616 (2016).   According to Petitioner, the *Hurst* decision "clarifies the role of the jury in sentencing a person to death and illuminates the constitutional problems with Indiana's past statue."   (ECF No. 135-1, at PAGEID # 17049.)   Petitioner argues that "*Hurst* nullified Florida's capital sentencing scheme because it gave the final decision to the trial judge, not the jury" and that "[d]ue to similarities between Florida's capital sentencing laws and Indiana's laws at the time of her trial," her death sentence was imposed in an unconstitutional manner.   (*Id.*)

Citing Rule 15(a)(2) of the Federal Rules of Civil Procedure, Petitioner argues that a party may amend its pleading with the opposing party's written consent or by leave of court, which should be freely given "when justice so requires."   (ECF No. 135, at PAGEID # 17029.) Petitioner asserts that Respondent does not oppose the proposed amendments to her petition, and this Court finds that Respondent has not filed any objection.

An application for habeas corpus relief "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."   28 U.S.C. § 2242.   Rule 15 of the Federal

Rules of Civil Procedure governs amendments, and provides in relevant part:

> **(a) Amendments Before Trial.**
>
> \*\*\*
>
> **(2)  *Other Amendments*.**   In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.   The court should freely give leave when justice so requires.
>
> \*\*\*
>
> **(c)   Relation Back of Amendments.**
>
> **(1)  *When an Amendment Relates Back*.**   An amendment to a pleading relates back to the date of the original pleading when:
>
> \*\*\*
>
> **(B)**   the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.

Fed. R. Civ. P. 15.

Petitioner relies on Fed. R. Civ. P. 15(a)(2) as authority to file her Second Amended Petition, insofar as Respondent does not oppose Petitioner's motion requesting leave to amend. In habeas corpus, however, it is Fed. R. Civ. P. 15(c) that traditionally provides such authority. That is because the habeas corpus statute imposes a one-year statute of limitations, 28 U.S.C. § 2244(d), and application of Rule 15(c)'s relation-back doctrine ensures that newly amended claims do not run afoul of that limitations period.   However, the AEDPA's statute of limitations "is not 'jurisdictional,' hence courts are under no obligation to raise the time bar *sua sponte*."   *Day v. McDonough*, 547 U.S. 198, 205 (2006).   Instead, it is an affirmative defense pursuant to Rule 8(c) of the Federal Rules of Civil Procedure that can be waived if not raised by Respondent.   *See, e.g., United States v. Bennett*, Nos. 3:10cr84, 3:12cv524, 2013 WL 310345, at \*1-2 (W.D.N.C. Jan. 25,

2013) ("By the government not raising the period of limitation in bar and affirmatively waiving the

period of limitation as to this claim, there is no need to conduct a relationship-back inquiry under

Rule 15 and *Mayle*, and the court may move forward and consider the merits of the claim raised.")

(citing *United States v. Smith*, 2007 WL 1217772, at *1 (M.D.Pa. April 24, 2007) ("The one-year

period of limitation for filing a § 2255 motion is not jurisdictional ….")).   Here, Respondent has

not raised the statute of limitations as a defense, or advanced any arguments regarding whether

Petitioner's new claims relate back to the claims set forth in her Amended Petition.   As such, the

Court finds that Respondent has waived any statute of limitations defense, and this Court is not

obligated to consider the issue *sua sponte*.   *Day*, 547 U.S. at 210 ("If, as this Court has held,

district judges have no obligation to act as counsel or paralegal to pro se litigants, then, by the same

token, they surely have no obligation to assist attorneys representing the State.") (internal citations

omitted).   Accordingly, the Court hereby **GRANTS** Petitioner's motion for leave to file a Second

Amended Petition, (ECF No. 135), pursuant to Fed. R. Civ. P. 15(a)(2), on the basis that

Respondent does not object and justice so requires.   The Court **DIRECTS** the Clerk to detach the

proposed Second Amended Petition (ECF No. 135-1) and **FILE** it on the docket.

III.      Motion to Stay and Hold the Proceedings in Abeyance

Petitioner moves this Court to hold the proceedings in abeyance so that she may return to

the Indiana state courts to present what she characterizes as two new and unexhausted claims.

First, Petitioner alleges that she suffers from Intellectual Disability ("ID"), and is therefore

ineligible for the death penalty pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Hall v.

Florida*, 134 S.Ct. 1986 (2014).   Petitioner argues that in *Hall v. Florida*, the United States

Supreme Court revisited its decision in *Atkins*, and "transformed the jurisprudential landscape for

analyzing and developing the necessary factual evidence in support of an *Atkins* claim."   (ECF

5

No. 136, at PAGEID # 17122.)   In support of her claim, Petitioner offers two recently developed expert opinions on her intellectual functioning – the Declaration of Marc. J. Tasse, Ph.D., an expert on Intellectual Disability and appropriate ID assessment procedures, and the Declaration of Julian Davies, M.D., an expert on Fetal Alcohol Spectrum Disorder.   (ECF No. 136, Ex. 1-2.)

Secondly, Petitioner seeks to challenge the constitutionality of her Indiana death sentence in light of *Hurst v. Florida*, 136 S.Ct. 616 (2016), arguing that her death sentence was imposed in an unconstitutional manner because the law in effect at the time of her trial "did not require juror unanimity in its findings, did not provide sufficient guidance to the jury on the weighing process, and did not establish the beyond reasonable doubt burden of proof."   (ECF No. 136, at PAGEID # 17148.)

Respondent opposes Petitioner's motion for stay and abeyance, arguing that Petitioner does not meet the requirements for a stay as set forth in *Rhines v. Weber*, 544 U.S. 269 (2005). With respect to Petitioner's claim that she is intellectually disabled and is therefore ineligible for the death penalty, Respondent argues that Petitioner cannot establish good cause for not exhausting this claim previously, and furthermore, cannot show that she has not engaged in dilatory tactics.   (ECF No. 137, at PAGEID # 17220, 17222.)   Specifically, Respondent notes that "[o]ne of the experts at Petitioner's trial in 1986, testified that Petitioner suffered from borderline retardation, and she was given multiple IQ tests before her trial."   (*Id*., at PAGEID # 17220.)   As such, Respondent asserts that "Petitioner's claim was available to her to be raised at trial onward.   But even if the year *Atkins* was decided is used as the starting point, this case was already stayed from 2002 until 2013, and Petitioner never attempted in those eleven years to exhaust this claim in state court."   (*Id*.)   With respect to Petitioner's argument that *Hall v. Florida*, changed the landscape for evaluating an *Atkins* claim, Respondent counters that while

6

*Hall* may "help" Petitioner's claim, *Hall* does not establish a "new claim" that could not have been raised previously, and notes that "Petitioner cites no authority that stands for the proposition that waiting for more favorable precedent establishes good cause for not presenting your claim to the state court sooner."  (*Id.* at PAGEID # 17221.)   As to Petitioner's new claim under *Hurst v. Florida*, 136 S.Ct. 616 (2016), Respondent argues that it is plainly meritless under *Rhines*, because *Hurst* does not apply retroactively.   (ECF No. 137, at PAGEID # 17221-17222.)

It is well settled that a state prisoner must exhaust available state court remedies before she can secure federal habeas corpus review.  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Picard v. Conner*, 404 U.S. 270, 275 (1971).   A petitioner satisfies the exhaustion requirement when she raises a claim in a manner that affords the state courts a fair opportunity to address the federal constitutional issue.  *See, e.g., Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Picard*, 404 U.S. at 275-76.   A petitioner must present the very claim to the state courts setting forth essentially the same facts, evidence, and legal basis that she seeks to present to the federal court. *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Picard*, 404 U.S. at 275-76; *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

If a petitioner fails to fairly present a claim and a state court remedy is still available for her to do so, then that claim is unexhausted and the petition would normally be subject to dismissal without prejudice for nonexhaustion.   28 U.S.C. § 2254(b), (c).   When a district court is faced with a mixed petition containing both exhausted and unexhausted claims, the court has discretion to stay the petition and hold the proceedings in abeyance to allow the petitioner to present the unexhausted claim to the state courts.  *Rhines v. Weber*, 554 U.S. 269, 275-76 (2005).   In so holding, the Supreme Court emphasized that stay and abeyance should only be utilized in certain circumstances:

7

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Rhines*, 554 U.S. at 277. Thus, the question before this Court is twofold. First, the Court must determine whether Petitioner failed to exhaust her claims in state court and if so, whether there was good cause for that failure. If the Court finds that good cause exists, the Court must then determine whether Petitioner's unexhausted claims are plainly meritless. In making that determination, the Court conducts "only a facial examination of the unexhausted claim" in order to determine "whether the proposed new claim is so facially meritless that presenting it to the state courts will be a waste of time." *Bailey v. Lafler*, No. 1:09-cv-460, 2010 WL 4286352, *5 (W.D. Mich. Sept. 29, 2010). It is with these standards in mind that the Court will decide Petitioner's motion to stay.

A. Petitioner's *Atkins* claim

Petitioner seeks to return to the Indiana state courts in order to argue, for the first time, that she is categorically ineligible for the death penalty pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Hall v. Florida*, 134 S.Ct. 1986 (2014), because she suffers from Intellectual Disability ("ID"). In *Atkins*, the United States Supreme Court recognized that the execution of the intellectually disabled contravenes the Eighth Amendment's prohibition against cruel and unusual punishment. In so holding, the Supreme Court endorsed the clinical definitions promulgated by the American Association on Intellectual and Development Disabilities, then known as the American Association on Mental Retardation, and the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, which defined an individual as

intellectually disabled if he or she demonstrates all three of the following: (1) significantly

subaverage intellectual functioning; (2) significant limitations in two or more adaptive skills, such

as communication, self-care, and self-direction; and (3) onset before the age of 18. *Atkins*, 536

U.S. at 318. Although the Court endorsed this definition, it ultimately left to the individual states

the tasks of not only establishing the standard for finding that a person is intellectually disabled,

but also fashioning procedures for pursuing an "*Atkins*" claim in the state courts. *Id*. at 317.

On May 27, 2014, the United States Supreme Court issued its decision in *Hall v. Florida*,

134 S.Ct. 1986 (2014). In *Hall*, the petitioner challenged Florida's use of a fixed-IQ score cutoff

that foreclosed further analysis of intellectual disability if a capitally charged defendant's IQ score

was greater than 70. *Id*. at 1996. The Florida Supreme Court had affirmed a lower court ruling

that Hall was not intellectually disabled, based on his IQ scores of over 70, without conducting any

further analysis. The Supreme Court noted that the Florida law at issue was in conflict with the

majority of states that had rejected strict IQ score thresholds in favor of considering a score's

"SEM," or "standard error of measurement." *Id*. The Court also noted that Florida's approach

disregarded the consensus in the medical field that IQ scores should be read as a range quantified

by the standard error of measurement, and not as a single fixed number. *Id*. at 2000. The Court

held that it is unconstitutional to foreclose "all further exploration of intellectual disability" simply

because a capitally charged defendant is deemed to have an IQ score above the threshold of 70, and

held that Florida's cutoff rule created an "unacceptable risk that persons with intellectual disability

will be executed," in violation of the Eighth Amendment. *Id*. at 1990. In so finding, the Court

cautioned that "[b]y failing to take into account the standard error of measurement, Florida's law

not only contradicts the test's own design but also bars an essential part of a sentencing court's

inquiry into adaptive functioning." *Id*. at 2001. *See also Brumfield v. Cain*, 135 S.Ct. 2269

(2015) (finding that a Louisiana state court's determination that the petitioner's IQ score of 75 demonstrated that he could not possess subaverage intelligence reflected an unreasonable determination of the facts).

In her motion to stay, Petitioner sets forth what she contends are "three important clarifications" that *Hall* made to the *Atkins* decision concerning the assessment of claims of intellectual disability.   (ECF No. 136, at PAGEID # 17123.)   First, in addressing IQ score thresholds, the Court "noted that intelligence tests suffer from 'inherent imprecision' and that IQ scores 'cannot be read as a single fixed number.'" (*Id.*) (quoting *Hall*, 134 S.Ct. at 1995).   Second, Petitioner argues that "*Hall* recognizes that intellectual disability "is a condition, not a number . . . It is not sound to view a single factor as dispositive of a conjunctive and interrelated assessment.'" (*Id.*) (quoting *Hall*, 134 S.Ct. at 2001).   Finally, Petitioner argues:

> Third, and perhaps most significantly, *Hall* indicates that greater deference is to be afforded to the definitions, standards and opinions of the scientific community than some states had done since *Atkins*.   As a result, *Hall* severely curtails, if not overrules, the note in *Atkins* that left it to the states to develop their own rules.   *See Hall*, 134 S.Ct. at 2001-02 (Alito, J., dissenting) ("In *Atkins*[], the Court held that the Eighth Amendment prohibits a death sentence for defendants who are intellectually disabled but does not mandate the use of a single method for identifying such defendants.   Today, the Court overrules the latter holding based largely on the positions adopted by private professional organizations.").

(ECF No. 136, at PAGEID # 17123.)

Respondent contends that Petitioner has not established "good cause" under *Rhines* for her failure to present her *Atkins* claim to the state courts previously.   Respondent argues that *Atkins* was decided in 2002, and Petitioner has not explained why she did not attempt to exhaust her claim of intellectual disability when the decision was first issued.   (ECF No. 137, at PAGEID # 17221.) In her reply, Petitioner argues that "a claim for relief from the death penalty under *Atkins*, is a different kind of claim than normal claims for relief in appeal or post-conviction proceedings,"

because "*Atkins* announced a categorical status exception to the death penalty, holding that a person suffering from intellectual disability could not, consistent with the protections of the Eighth Amendment, be executed."   (ECF No. 138, at PAGEID # 17226.)   Petitioner notes that "[n]either the holding in *Atkins* nor the Indiana rules and procedures governing *Atkins* claims have established a statute of limitations for raising such a claim based on a petitioner's status as an intellectually disabled individual."   (ECF No. 136, at PAGEID # 17134.)   According to Petitioner, "a categorical status claim for relief from the death penalty can be raised at any time" and Respondent has "pointed to no provision in the statutes, rules, or applicable case law indicating that there is any limitation placed on when a death sentenced individual can raise a claim based on her status as suffering from ID."   (*Id*. at 17227.)

Furthermore, Petitioner argues that prior to the Supreme Court's 2014 decision in *Hall v. Florida,* she had reason to believe the Indiana state courts would refuse to grant her a hearing on an *Atkins* claim if she had attempted to raise it, based solely on her IQ scores.   Petitioner explains:

> Brown had four IQ scores that gave potential cause for concern because they were over 70.  While Indiana's definition of Intellectual Disability does not include a strict cut-off score like Florida's, Brown still risked a negative ruling because she had four out of five historical IQ scores over 70.  Additionally, she risked a court decision precluding consideration of any evidence relating to the second and third criteria for ID based on IQ scores alone.  Until *Hall* made it clear that ID assessment requires a comprehensive and concurrent assessment of all three criteria (IQ, adaptive behavior, and age of onset), bringing her claim to the Indiana courts prematurely carried significant risks of losing her claim forever.

(ECF No. 136, at PAGEID # 17137.)   Finally, Petitioner notes that she "did not have a measurement of her current level of intellectual functioning until the results of Dr. Stinson's testing on November 1, 2014, which showed that Brown has an adjusted full scale IQ of 67."   (*Id*.) Petitioner contends that in response to that information, counsel began a "detailed investigation into possible informants with personal knowledge of Brown during her developmental years and

11

began interviewing those individuals to identify those who may be appropriate witnesses to be

interviewed by an adaptive behavior expert." (*Id*.) The information that was gathered was

provided to Drs. Tasse and Davies, and helped form the basis for their opinions, which have been

provided in support of the Second Amended Petition and the motion to stay. Petitioner asserts

that "[b]oth experts have reviewed the relevant records from the previous state court proceedings,

as well as the newly discovered evidence resulting from subsequent investigations conducted by

Brown's habeas counsel," and "[b]oth have offered opinions that are consistent with the diagnosis

of ID." (*Id*. at PAGEID # 17124.)

Petitioner attaches the Declaration of Dr. Marc Tasse, PhD, who is a licensed psychologist

in North Carolina, a Professor in the Department of Psychology and Psychiatry at The Ohio State

University, and the Director of the Ohio State University Nisonger Center, a federally-funded

University Center for Excellence in Developmental Disabilities. (ECF No. 136-1, at PAGEID #

17159, ¶¶1-2.) Dr. Tasse states that he has worked with individuals with intellectual disabilities

for more than 25 years. (*Id*. at ¶3.) With respect to the first criterion for a diagnosis of

intellectual disability, Dr. Tasse notes that "Ms. Brown's intellectual functioning was assessed six

times on individually administered comprehensive standardized tests of intelligence between 1975

and 2014," and her "case files include records of a first administration of a standardized test of

intelligence when she was only 12 years old." (*Id*. at PAGEID # 17179, ¶57.) Dr. Tasse opines:

> Based on a thorough review of all available information regarding Ms. Brown's
> intellectual functioning and test results obtained between the ages of 12-51 years
> old, Ms. Brown's intellectual functioning is consistently significantly subaverage.
> Her FSIQ scores have ranged from 51-73. Considering all sources of
> measurement error, all of Ms. Brown's FSIQ scores obtained on all six
> administrations of individual intelligence tests place her intellectual functioning
> significantly subaverage (i.e., FSIQ = 70-75 or less).
>
> This conclusion is based on all available information which indicates that Ms.

12

Brown's intellectual functioning is currently subaverage and was prior to the age of 18 years.

(*Id*. at PAGEID # 17184, ¶¶75-76.) Petitioner argues that Dr. Tasse's conclusion establishes "a prima facie case that she can meet the threshold standard discussed in *Hall* for the first criterion for an ID diagnosis." (ECF No. 136, at PAGEID # 17126.)

With respect to the requirement that Petitioner suffer adaptive behavior deficits, Petitioner argues that the Declaration of Dr. Tasse "sufficiently establishes a prima facie case that Brown has deficits in adaptive behavior that are consistent with a diagnosis of Intellectual Disability, requiring a remand to present this evidence to the Indiana state courts in the first instance." (ECF No. 136, at PAGEID # 17128.) Dr. Tasse states that he reviewed previous psychological evaluations, school records, and affidavits and declarations of individuals who knew Petitioner as a child. (ECF No. 136-1, at PAGEID # 17184, ¶77.) The information reviewed by Dr. Tasse suggests that Petitioner was a slow learner who always had difficulty in school, was unable to manage money including knowing correct change when she made purchases, she had no work history, never lived independently or managed the payment of household bills, and was unable to understand and manage her menses until she was 16 years old. (*Id*. at PAGEID # 17187-17186, ¶¶80-87.) Dr. Tasse opines that most of the information he reviewed concerning her adaptive behavior was obtained by her counsel, and although the information indicates the presence of deficits in adaptive behavior, including conceptual, social and practical skills, "[a]dditional investigation, by a professional trained and experienced in the assessment of adaptive behavior for the purpose of determining intellectual disability, is needed to determine the exact nature and extent of Ms. Brown's adaptive behavior deficits." (*Id*. at PAGEID # 17186, ¶88.) With respect to Dr. Tasse's recommendation, Petitioner notes that she has already retained the services of an

13

adaptive behavior expert to conduct the additional investigation recommended by Dr. Tasse, and

that she will complete the additional investigation once she is permitted to return to state court.

(ECF No. 136, at PAGEID # 17128.)

Petitioner has also referenced the Declaration of Julian Davies, M.D., a board-certified

pediatrician and Clinical Professor of Pediatrics at the University of Washington School of

Medicine.   Dr. Davies states that he was asked to evaluate whether Petitioner has a Fetal Alcohol

Spectrum Disorder, and if so, how that might be related to intellectual disability.   (ECF No.

136-1, at PAGEID # 17190.)   As part of his examination and evaluation, he met with Petitioner at

the Dayton Correctional Institution on June 13, 2016.   (*Id*. at 17203.)   Dr. Davies concluded that

in his medical opinion, Petitioner suffers from Partial Fetal Alcohol Syndrome.   (*Id*. at 17210.)

According to Petitioner:

> Dr. Davies notes that there were many possible causes of Brown's brain
> impairment other than FASD.  But given the sentinel physical features of FAS,
> including very low birthweight and moderate facial features and her history of early
> childhood intellectual deficits and having functional evidence of brain damage in a
> pattern consistent with FASD implicate prenatal alcohol as a primary cause.
> Maternal drinking is the most common cause of ID in the developed world.
> Accordingly, a diagnosis on the fetal alcohol spectrum disorder satisfies the third
> prong (developmental onset) of an ID diagnosis.

(ECF No. 136, at PAGEID # 17133.)

This Court has granted Petitioner's unopposed motion for leave to amend her petition to

add two additional grounds for relief that have not yet been presented or developed in the Indiana

state courts.   Accordingly, the Court has before it a mixed petition containing both exhausted and

unexhausted claims.   When faced with a mixed petition, *Rhines* authorizes the Court to stay the

proceedings and hold them in abeyance while Petitioner attempts to return to state court to exhaust

the claims.   Here, Petitioner seeks an opportunity to return to the Indiana state courts to prove that

she is intellectually disabled and exempt from the death penalty. At the time of Petitioner's trial, state and federal law permitted the imposition of the death penalty for intellectually disabled persons. The Supreme Court did not decide, in *Atkins*, that "in light of … evolving standards of decency," the Eighth Amendment "places a substantive restriction on the State's power to take the life" of an intellectually disabled offender, 536 U.S., at 317, until long after Petitioner was a resident of death row. Unlike the typical *Atkins* case in which a state court initially decides the issue of intellectual disability and then a federal habeas court conducts a deferential review under the AEDPA, Petitioner's case "falls within a narrow category – an '*Atkins* lacuna' – of . . . prisoners who were tried, and whose first state habeas petitions were decided, before *Atkins* was handed down." *Hearn v. Quarterman*, No. 3:04cv450-D, 2008 WL 3362041, at *4 (N.D. Tex. Aug. 12, 2008) (granting stay and abeyance to exhaust *Atkins* claim where *Atkins* "had not yet been decided when Hearn filed his initial habeas petition"). Here, Petitioner's state court proceedings were complete and the instant habeas case was pending for more than three years before the Supreme Court decided *Atkins*.

As to the delay in seeking to present her *Atkins* claim to the state courts, this Court finds compelling Petitioner's argument that it was the Supreme Court's decision in *Hall v. Florida*, and the Supreme Court's additional guidance on the issue of determining intellectual disability, that prompted her counsel to revisit the issue and dig deeper into the potential viability of an *Atkins* claim, despite potentially non-qualifying IQ scores. Citing *Woods v. State*, 863 N.E.2d 301, 304 (Ind. 2007), Petitioner argues that prior to *Hall*, under Indiana law, evidence of IQ test scores that were on the cusp of the range for significantly subaverage intellectual functioning could be used to justify a denial of relief under *Atkins*, "without assessing the IQ scores in the context of the individual's adaptive behavior deficits." (ECF No. 138, at PAGEID # 17229.) After *Hall*,

Petitioner argues, the determination of intellectual disability requires a comprehensive and concurrent assessment of all three criterion – IQ, adaptive behavior and age of onset – and the fact that Petitioner has had historical IQ scores over 70 is not as great of a "cause for concern." (ECF No. 136, at PAGEID # 17137.)

The Court finds persuasive Petitioner's argument that after *Hall*, clinical judgment, beyond adherence to IQ-test thresholds, can support a diagnosis of intellectual disability. Furthermore, it appears that there is no obvious time limit for raising an *Atkins* claim in state court, and Respondent has certainly not directed this Court's attention to any such provision. Because it appears Petitioner can still exhaust her claim, the Court finds in its discretion that her federal petition should be stayed and abated so that she can file an *Atkins*-based action in the Indiana state courts.

Finally, the Court notes that while Respondent contends that Petitioner fails to establish good cause for not raising her *Atkins* claim sooner, Respondent does not argue that Petitioner's *Atkins* claim is plainly meritless. The Court will address this issue nonetheless, but notes that it must only conduct "a facial examination of the unexhausted claim" in order to determine "whether the proposed new claim is so facially meritless that presenting it to the state courts will be a waste of time." *Bailey v. Lafler*, No. 1:09-cv-460, 2010 WL 4286352, *5 (W.D. Mich. Sept. 29, 2010). As set forth in the motion to stay, Petitioner's evidence of intellectual impairment now includes, *inter alia*, declarations from experts opining that Petitioner's intellectual deficits and fetal alcohol syndrome evince significantly subaverage intellectual functioning and suggest adaptive behavior deficits, with an onset prior to age eighteen. Furthermore, as Petitioner notes, Indiana's statute defining intellectual disability, Ind. Code Ann. § 35-36-9-2, "is potentially less demanding," in that it allows an age of onset prior to age twenty-two. (ECF No. 136, at PAGEID # 17134.)

Given the nature of the right at stake, and after reviewing Petitioner's additional evidence, the

Court cannot find that Petitioner's *Atkins* claim is facially meritless.   Accordingly, the Court finds

that because Petitioner's claim is unexhausted, principles of comity and federalism demand that

she permit the Indiana state courts the first opportunity to decide whether she suffers from

intellectual disability and is not subject to execution.   The Court further finds that Petitioner has

not engaged in undue delay in developing her claim.

B.   Petitioner's *Hurst* Claim

Petitioner also seeks stay and abeyance so that she may return to state court to raise a claim

challenging the constitutionality of her death sentence in light of *Hurst v. Florida*, 136 S.Ct. 616

(2016).   Petitioner argues that her death sentence was imposed in an unconstitutional manner

because the law in effect at the time of her trial "did not require juror unanimity in its findings, did

not provide sufficient guidance to the jury on the weighing process, and did not establish the

beyond reasonable doubt burden of proof" as to her sentence.   (ECF No. 136, at PAGEID #

17148.)   Respondent argues that Petitioner's *Hurst* claim is plainly meritless within the meaning

of *Rhines* because *Hurst* does not apply retroactively.   (ECF No. 137, at PAGEID # 17221,

17222.)

Without expressing any opinion regarding the potential cognizability or merits of

Petitioner's claim, the Court notes that in the context of a motion for stay and abeyance, the Court

need not determine whether every unexhausted claim is plainly meritless, "as long as at least one

claim has potential merit."   *Zebroski v. Phelps*, No. 03-853-LPS, 2013 WL 1969248, *3 (D. Del.

May 13, 2013).   That is:

> *Rhines* does not state or suggest that every unexhausted claim in the petition must
> satisfy, individually, the 'good cause' and 'potentially meritorious' requirements
> before a stay will be permitted. Indeed, the rationale for permitting a stay would

17

apply with more force to a petition in which only one of the unexhausted claims meets the *Rhines* requirements, but is likely meritorious, than it would to a petition in which all the unexhausted claims meet the *Rhines* requirements, but none are more than potentially meritorious. The efficient approach is for the court to address the petitioner's motion for stay and abeyance before reaching respondents' exhaustion arguments as to each individual claim. If a stay is warranted with respect to any single claim, the court need not conduct a claim-by-claim exhaustion analysis regarding the remaining claims.

*McConnell v. Baker*, 2012 WL 3100559, at *4 (D. Nev. Jul. 27, 2012); *Weber v. Baker*, No. 3:11-cv-0104, *2 (Nev. Oct. 15, 2012) (same). *See also Swan v. Coupe*, 967 F.Supp.2d 1008, 1012-13 (D. Del. Sept. 4, 2013) ("When a mixed application contains more than one unexhausted claim, as in this case, a stay should be granted as long as at least one unexhausted claim is not plainly meritless."). Here, the Court has determined that a stay is warranted so that Petitioner may return to state court to pursue an *Atkins* claim, and accordingly, will not express an opinion regarding any additional unexhausted claims that Petitioner intends to pursue.

IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Petitioner's unopposed motion to amend her petition. (ECF No. 135.) The Clerk is **DIRECTED** to file the Second Amended Petition. (ECF No. 135-1.) Furthermore, the Court **GRANTS** Petitioner's motion to hold the proceedings in abeyance pending exhaustion of her *Atkins* claim in the Indiana state courts. (ECF No. 136.) Accordingly, the Court **ORDERS** that the instant petition be **STAYED** and the proceedings held in **ABEYANCE**. The Court **FURTHER ORDERS** the following: The parties **SHALL FILE** an agreed proposed state court presentation schedule for this Court's consideration within forty-five (45) days of the date of this Order. This Court cautions Petitioner that she should avoid any unnecessary delay in initiating the proceedings in state court. Furthermore, the parties **SHALL FILE** in this Court a joint status report every ninety (90) days; and Petitioner **SHALL**

18

**SEEK** reinstatement of this case on the Court's active docket within thirty (30) days of fully

exhausting her state court remedies.


      **IT IS SO ORDERED.**




                       **s/Algenon L. Marbley**
                    **ALGENON L. MARBLEY**
                    **United States District Judge**

**Date:   March 27, 2017**